## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHARLES SEWARD, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No.  08 CIV 3976 |
| v. | ) ) | KMK/MDF |
| INTERNATIONAL BUSINESS MACHINES, CORP. d/b/a IBM CORP., | ) ) ) ) | ECF CASE |
| Defendant. | ) ) | |

### PLAINTIFFS' REPLY IN SUPPORT OF THEIR
### MOTION TO PROCEED AS A COLLECTIVE
### ACTION AND TO FACILITATE NOTICE UNDER 29 U.S.C. §216(b)

Erik H. Langeland
**ERIK H. LANGELAND, P.C.**
500 Fifth Avenue, Suite 1610
New York, NY 10110
(212) 354-6270
(212) 898-9086 (Fax)
elangeland@langelandlaw.com

James B. Zouras
Ryan F. Stephan
**STEPHAN ZOURAS, LLP**
205 North Michigan Avenue, Suite 2560
Chicago, IL 60601
(312) 233-1550
jzouras@stephanzouras.com

Jon A. Tostrud
**CUNEO, GILBERT & LADUCA, LLP**
1801 Century Park E., Suite 2400
Los Angeles, CA 90067
(310) 556-9621
jtostrud@cuneolaw.com

**Attorneys for Plaintiff**

# TABLE OF CONTENTS

Page

INTRODUCTION……………………………………………………….................1

ADDITIONAL FACTS IN SUPPORT OF MOTION……………..……………………………….2

UNDISPUTED FACTS……………………………………………………………...3

ARGUMENTS……………………………………………………….................5

I.    Plaintiffs Have Easily Met Their Burden for Conditional Certification……………………5

    A.  Defendant's Common  Policy Requires Plaintiffs to "Be Ready" to Handle Customer Calls Before the Start of Their Shift While Paying Only for Their Defaulted Scheduled Time …................................................................................5

    B.  Disputed Factual Issues and Any Purported Variation Among CCR's Do Not Defeat Conditional Certification...........................................................................................6

    C.  Notice is Appropriate to All Current and Former CCR's ……………………………8

    D.  Plaintiffs' Evidence Meets their Burden on Conditional Certification ………………9

CONCLUSION……………………………………………………………10

## INTRODUCTION

The *sole* question before the Court is whether Plaintiffs have made a modest showing that they and other Call Center Representatives ("CCR's") worked before their designated work shifts without pay. *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, *7 (S.D.N.Y. Sept. 28, 2006) (citation omitted); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101, 104 (S.D.N.Y. 2003). Plaintiffs have met their "minimal" burden at this stage by demonstrating that they and other CCR's worked in Defendant's call center, had the same primary duty of servicing customers on the telephone, and were victims of a common policy or plan that denied them pre-shift pay in violation of the FLSA. *E.g., Sherrill v. Sutherland Global Services, Inc.*, 487 F.Supp.2d 344, 348-49 (W.D.N.Y. 2007); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005); *Doucoure v. Matlyn Food*, 2008 WL 1771771, *2 (E.D.N.Y. April 15, 2008).

Defendant's opposition all but concedes that hundreds of persons, including the recipients of emails distributed by George Lambousis and Gary Kamprath[1] (two of Defendant's so-called "rogue" managers) are similarly situated because they were required to work unpaid pre-shift time. Opposition at page 7-8. No matter what post-litigation spin Lambousis and Kamprath place on their emails, their directives are evidence of a common policy which deprives Plaintiffs of pay for time worked before their scheduled shift.

Strikingly absent from Defendant's brief is any explanation why certain Plaintiffs, who indisputably never reported to Lambousis or Kamprath, nevertheless routinely worked unpaid time before their scheduled shift. And while Defendant claims that staggered start times somehow make pre-shift work unnecessary, it fails to explain why Plaintiffs, who work on teams which use staggered start times, regularly work pre-shift time without pay. Opposition at

---

[1] To the extent Kamprath now claims he did not intend his email as a policy but merely a "recommendation" Defendant's employees could ignore (Opposition at pages 7-8), such arguments go to his credibility and the ultimate merits which cannot be decided at this stage.

page 6; *E.g.*, Exhibit 6 to Motion, Dep. Starkey at 25-26, 32 & 40.

Defendant admits that all CCR's, regardless of the team to which they are assigned, are paid based upon their scheduled time rather than their actual time worked, including work they necessarily perform every day before the start of their scheduled shift.   Opposition at page 4. Finally, it acknowledges that its *written* policy requiring payment for pre-shift time applies to all CCR's.  *Id.* at page 3.   In so doing, Defendant concedes that its Atlanta CCR's: (1) are all paid the same way; (2) all have their time recorded in the same way; and, (3) are all subject to the same timekeeping and payment policies.  For these reasons, this case is clearly appropriate for collective treatment and conditional certification should be granted.

## ADDITIONAL FACTS IN SUPPORT OF MOTION

Defendant's arguments are inadequate to overcome Plaintiffs' showing that CCR's are similarly situated.  Its contention, that "most" CCR's do not work before their scheduled shift, is an argument on the ultimate merits which cannot be decided at this early stage.  *Hens v. ClientLogic Operating Corp.,* 2006 WL 2795620, at *3 (granting conditional certification in call center case despite defendant's argument that it had a written policy to pay overtime and any deviations from that policy were "isolated."); *Clarke v. Convergys Customer Mgmt. Group, Inc.,* 370 F.Supp.2d 601, 603-04 (S.D.Tex. 2005)(granting conditional certification in call center case despite defendant's argument that pre-shift overtime claims were "individualized."); *Lynch v. United Services Auto Ass'n,* 491 F.Supp.2d 357, 367-68 (S.D.N.Y. 2007); *Hoffman v. Sbarro, Inc.,* 982 F.Supp. 249, 262 (S.D.N.Y. 1997).  Despite Defendant's failure to produce any written discovery relating to CCR's other than named Plaintiff and opt-ins, Plaintiffs have recently acquired additional evidence leaving little doubt that CCR's are subject to the same pre-shift work requirements.  Attached as Exhibit A is an email from Vicki Reidy, another IBM manager, dated

August 11, 2008 which instructs CCR's, "[M]ake sure you come to work, *log in and available to take calls at your start time …*" (Emphasis added). Contrary to what one would expect based on Defendant's representations, Reidy did not transmit her email to one of IBM's "rogue" teams. She sent it to a team <u>not</u> identified by Defendant – the IBM Intel Smart Center (designated ISC-ATL 1 on the "To" line of the email). *Id.* No Plaintiff worked on this team. Opposition at page 5. Reidy's email, the two previously-referenced emails from IBM management,[2] and Plaintiffs' other evidence exceeds a "modest showing" that CCR's were victims of a common unwritten policy which denied payment for pre-shift time worked.

## **UNDISPUTED FACTS**

While Defendant concedes that many CCR's were required to work pre-shift, it fails to produce any evidence that such time was ever actually recorded or paid. Indeed, the limited pay records produced by Defendant show this time was not paid. And even if Defendant could show that certain CCR's were properly paid, it would not change the uncontested evidence that CCR's were not paid for the time they worked before their scheduled shifts booting up their computers, opening software applications, reviewing work-related email alerts and otherwise preparing themselves and their equipment. While some of Defendants' teams may interact with customers in different ways, all CCR's share the same primary duty: providing customer service and support over the telephone. Defendant concedes that all CCR's are paid based upon the same schedule-based eTOTALS timekeeping system and are all subject to the same policies on payment for pre-shift work.

Although Defendant plainly failed to maintain accurate time records, an audit of Defendant's badge swipe in and out data as well as its CMS log-in and out data show Plaintiffs all worked additional time without pay. This unpaid pre-shift time is not nebulous; it is supported by Defendant's own data. Plaintiffs prepared a spreadsheet which compares CMS log-in and out data (which reflects

---

[2] Defendant failed to produce these emails in discovery, and Plaintiffs were forced to locate them through their own

Plaintiffs' log in and out times on IBM's telephone system) to the amount of time Plaintiffs were paid by IBM. (*See* Exhibit B)  Plaintiffs' comparison demonstrates that Plaintiffs work significant unpaid pre-shift time.  For example a review of the CMS log-in and log-out data for Ray Liles during the month of May, 2007 reveals he was working logged in to IBM's telephone system for 182 hours and 5 minutes, but was only paid for 173.34 hours.  In other words, Liles was not paid for over 10 hours worked during the month of May, 2007.  CMS record for Plaintiffs Starkey, Seward and Scott also confirms they were working logged in to IBM's telephone system for significant overtime each week without pay.  (*See* Exhibit B)  Moreover, according to IBM, and despite CMS log-in data showing otherwise, Seward was not paid any overtime during the years of 2005, 2006, 2007 or 2008.  (*See* Exhibit C)  Data for the other opt-ins show a similar and consistent pattern of pre-shift time worked without pay.  Despite these records, overtime was largely ignored by IBM.[3]  An audit of this data will provide an easy way to confirm class-wide violations.[4]

Defendant admits it directed CCR's to "be ready" to take calls at the beginning of their shift, so they had to open numerous software applications and perform other essential tasks well in advance of their scheduled start time.  These tasks routinely took Plaintiffs as much as 60 minutes each day.  Plaintiffs were specifically directed to perform this work so they could promptly assist customers at the start of their shift time.  Seward, an IBM veteran of nearly 39 years, testified that performing pre-shift tasks without compensation is "the norm" and "part of the job."  Plaintiff's Motion at Exhibit 4, Dep. Seward at 267 & 320.  Defendant had systems in place to record time beyond CCR's scheduled shift, but specifically instructed them not to record pre-shift time and disciplined CCR's who did.  Most, if not all of this time resulted in Plaintiffs working over forty hours per week and should have resulted in additional overtime pay.

---

independent investigation.
[3] Up until the time of this lawsuit, neither Seward nor Barday were ever paid any overtime.  The other plaintiffs, including Scott and Starkey were only paid a fraction of the overtime owed.
[4] Upon information and belief, IBM can run searches of its electronically stored data, including CMS log-in data, in

## ARGUMENTS

### I.  PLAINTIFFS HAVE EASILY MET THEIR BURDEN FOR CONDITIONAL CERTIFICATION.

At this stage, the Court performs an analysis to determine whether Plaintiff can make a modest factual showing sufficient to demonstrate that he and other putative plaintiffs together were potentially victims of a common policy or plan that violated the FLSA.  *See e.g., Davis v. Abercrombie & Fitch Co.*, 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 23, 2008); *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, *7 (S.D.N.Y. Sept. 28, 2006)(citation omitted); *Sherrill v. Sutherland Global Services, Inc.*, 487 F.Supp.2d 344, 348-49 (W.D.N.Y. 2007)(citations omitted); *Hens,* 2006 WL 2795620, at *3; *Russell v. Illinois Bell Telephone Co.*, 2008 WL 4191763, *2 (N.D.Ill. Sept. 15, 2008).  Because Plaintiffs have met this burden, conditional certification should be granted.

#### A.  Defendant's Common Policy Requires Plaintiffs to "Be Ready" to Handle Customer Calls Before the Start of Their Shift While Paying Only for Their Defaulted Scheduled Time.

Defendant argues that Plaintiffs have not put forth evidence of a common policy or plan.  However**,** Plaintiffs have submitted evidence that CCR's were required to "be ready" and available to handle customer calls at least 10 minutes before their scheduled shift.  They therefore arrived and began work as much as 60 minutes earlier to comply.  Defendant concedes that instead of paying and recording CCR's their actual time worked, it paid and recorded time based on CCR's schedule—presuming CCR's work a maximum of eight hours a day by "default."  Inexplicably, it makes this presumption despite its own mandatory requirement of daily pre-shift work.  Thus, "rogue" managers are not to blame; it is Defendant's flawed schedule-based timekeeping system which results in rampant underpayment of pre-shift time.

This evidence meets Plaintiffs' burden at conditional certification of showing that all

CCR's were potentially victims of a common policy or plan to violate the FLSA.  *See Sherrill v. Southerland Global Svcs., Inc,* 487 F.Supp.2d 344, 347 (W.D.N.Y. 2007)(granting conditional certification where plaintiffs were expected to arrive early to do paperwork and sign on to the phone system but not allowed to log in to their timekeeping system until the beginning of their shifts); *Hens,* 2006 WL 2795620, at *6 (granting conditional certification to call center employees who had to be logged-in and ready to take calls at the time their shifts began); *Russell v. Illinois Bell Telephone Co.,* 2008 WL 4191763, *6 (N.D.Ill. Sept. 15, 2008)(granting conditional certification where the plaintiffs were required to do off-the-clock work before logging in to the defendant's time-keeping system); *Burch v. Qwest Comm. Int'l, Inc.,* 500 F.Supp.2d 1181, 1186 (D.Minn. 2007)(same); *Clarke,* 370 F.Supp.2d at 603-04 (same).

   **B.     Disputed Factual Issues and Any Purported Variation Among CCR's Do Not Defeat Conditional Certification.**

   Despite the leniency of Plaintiffs' burden at this stage, Defendant has submitted several declarations, all from current managers, in an attempt to prove that Plaintiffs' allegations do not apply to all CCR's at the Atlanta facility.  As an initial matter, courts rightfully disregard declarations produced by defendants from current employees because of the risk of bias and coercion.  *Morden v. T-Mobile USA, Inc.,* 2006 WL 2620320, at *3 (W.D.Wash. Sept. 12, 2006). Moreover, the declarations amount to little more than the opinion of Defendant's management that an unspecified percentage of Defendant's CCR's do not work pre-shift based upon undocumented *post hoc* distinctions among teams.  Despite Defendant's exclusive access to hundreds of current CCR's, emails and electronic data, it failed to produce any testimony, records or other direct evidence from any of these sources to substantiate its claims.

   Merits-based arguments such as those proffered by Defendant are not considered at this stage.  *See Shabazz v. Asurion Ins. Serv.,* 2008 WL 1730318, *3 (M.D.Tenn. Apr. 10, 2008)

(finding that defendant's 47 page memorandum and detailed declarations about the differences among the plaintiffs "effectively ignore[d] the requirement that Plaintiffs need only establish a "modest factual showing" that there are similarly situated . . ."). Defendant's argument that Plaintiffs are to blame because they could have been compensated by reporting "exceptions" into the timekeeping system is equally misplaced. Plaintiffs have provided evidence that they and other CCR's were required, in writing, to boot up their computers, open numerous software applications, perform other duties and otherwise "be ready" at least 10 minutes before their scheduled shift began. Only when their equipment was ready could CCR's could begin handling calls. Plaintiffs testified they were discouraged from entering "exceptions" into the eTOTALS system, which could only be done with manager approval, that pre-shift time was not considered compensable work, and that any attempt to record such time could result in discipline up to and including termination. Exhibit 2, Dep. Lambousis at 67-68; Dec. Salles at ¶¶17-18; Exhibit 6, Dep. Starkey at 89, 95-96 & 115; Exhibit 5, Dep. Barday at 36-39 & 150.

Defendant further argues that purported variation among CCR teams makes conditional certification inappropriate. However, Defendant's arguments about the predominance of individualized inquires between Plaintiffs and other employees are "more appropriately decided at step two, after it is known who the class [sic] will consist of, and after some of the factual issues can be fleshed out in discovery." *Russell*, 2008 WL 4191763, at *6; *Masson v. Ecolab, Inc.*, 2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005)(explaining that the eventual need for "extensive" individual discovery does not prevent conditional certification at this first stage); *Damassia v. Duane Reade, Inc.*, 2006 WL 2853971 *6 (S.D.N.Y. Oct. 6, 2006)(court reasoned that under "defendant's logic, no group of opt-in plaintiffs would ever be 'similarly situated' unless they were clones of one another" working in completely identical situations). To the extent Defendant can argue about purported differences among certain CCR teams, it will have the opportunity to

do so following collective discovery on a motion for decertification.  At this stage, Plaintiffs have established that CCR's, who all shared the same primary job responsibility, timekeeping requirements and pay plans, are similarly situated for purposes of notice.

C.    **Notice is Appropriate to All Current and Former CCR's.**

Plaintiffs, current and former CCR's in Defendant's Atlanta call center, collectively worked on at least four separate teams and had at least five different managers not counting Vicki Reidy, another manager who likewise confirms the policy that CCR's "be ready" at the start of their shift.  Opposition at page 4-5; Exhibit A.  They seek to send notice to everyone who worked as a CCR during the past three years.  To send notice to all similarly situated putative plaintiffs, Plaintiffs are not required to provide evidence of an illegal practice at every "team", department or even geographic location where putative plaintiffs worked.  *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54-55 (S.D.N.Y. 2005)(ordering notice to all current and former employees in approximately 108 facilities, located in 21 different states despite defendant's claim that plaintiff's declarations contained "bald assertions"); *Sherrill,* 487 F.Supp.2d at 349 (conditionally certifying a class of call center employees alleging off-the-clock claims at eleven call centers on the basis of declarations from only ten); *Burch,* 500 F.Supp.2d at 1188 (conditionally certifying a class of call center employees alleging off-the-clock violations where plaintiffs had produced declarations from "a minority" of call centers); *Adams v. Inter-Con Sec. Systems, Inc.,* 242 F.R.D. 540, 543-44 (N.D.Cal. 2007)(granting conditional certification at 500 facilities on the basis of thirteen declarations); *White v. MPW Indus. Servs., Inc.,* 236 F.R.D. 363, 374 (E.D.Tenn. 2006)(refusing to limit conditional certification to those locations from which plaintiffs had submitted declarations due to allegations of a company-wide plan to violate the FLSA).

Requiring proof at this early stage of violations at every internal subdivision of Defendant's facility defeats the purpose of the collective action.  Plaintiffs have shown that CCR's

from a fair cross section of the Atlanta center experienced the same pay shortages. Defendant concedes that all CCR's were paid based on their scheduled shift. It is therefore appropriate to send notice to all current and former CCR's.

**D.     Plaintiffs' Evidence Meets their Burden on Conditional Certification.**

Because "the initial class certification determination must be made on . . . pleadings and affidavits, which necessarily contain unproven allegations," this evidentiary burden is "very light." *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 322 (S.D.N.Y. 2007); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2008 WL 793838, at *2 (N.D.Cal. Mar. 24, 2008). Thus, Defendant's complaint that a portion of Plaintiffs' evidence may not be admissible at trial is misplaced at the conditional certification stage. *See White*, 236 F.R.D. at 369; *Molina v. First Line Solutions, LLC*, 566 F.Supp.2d 770, 788 n.20 (N.D.Ill. 2007); *Crawford v. Lexington-Fayette Urban County Government*, 2007 WL 293865 *2 (E.D.Ky. Jan. 26, 2007);

In *White*, the Court recognized that plaintiffs are not required at this early stage to meet the evidentiary standards of summary judgment:

> [M]otions for conditional class certification, unlike motions for summary judgment, do not seek final disposition of a case on the merits. Requiring admissible evidence at the summary judgment stage is logical: there is a possibility that trial will be avoided by the result, so courts should decide the motions based on evidence that would be admissible at trial, if one were held. There is, however, no corresponding possibility of final disposition at the conditional class certification stage: whether a motion for conditional class certification is granted or denied, the case proceeds with discovery.

*Id.*; *Fasanelli*, 516 F.Supp.2d at 322 (rejecting defendant's evidentiary objections and conditionally certifying the case). At this early stage, the test is simply whether there is a "factual nexus' between the claims of the named Plaintiffs and those who have chosen to opt-in to the action." *Id.* at 321; *Crawford v. Lexington-Fayette Urban County Govt.*, 2007 WL 293865, at *2-3 (E.D.Ky. Jan. 26, 2007)("Courts which require some factual support for conditional certification

should take a relaxed approach to evidentiary standards … at this stage.").

Plaintiffs' evidence, including undisputed written proof that working pre-shift is required from all CCR's, provides the requisite factual nexus for notice to be issued.  All Plaintiffs' assertions are based upon personal knowledge as veteran CCR's.  Their testimony[5] includes factual descriptions of CCR job duties, compensation and Defendant's practices.  The Court may reasonably infer that Plaintiffs, "as employees of [defendants], would have learned during the normal course of their employment how the company operates and what the company's policies are."  *White,* 236 F.R.D. at 369; *Aguayo v. Oldenkamp Trucking,* 2005 WL 2436477, at *4 (E.D.Cal. Oct. 3, 2005).

It is reasonable that Plaintiffs learned that their coworkers were working before their scheduled shifts, shared similar time-recording practices and did not receive payment for pre-shift work.  The three emails Plaintiffs have so far uncovered through their independent investigation, along with the other mass emails they testified they received but which Defendant has not produced, buttress the evidence that unpaid pre-shift work was not isolated to the teams on which Plaintiffs happened to work.  Plaintiffs' evidence meets their evidentiary burden on a motion for conditional certification, and Defendant's arguments to the contrary must be rejected.

## CONCLUSION

Plaintiffs request that their motion for conditional certification be granted.

Dated: February 16, 2009                                        Respectfully Submitted,

                                                                                    /s/ Erik H. Langeland
                                                                                    Erik H. Langeland
                                                                                    ERIK H. LANGELAND, P.C.
                                                                                    500 Fifth Avenue, Suite 1610
                                                                                    New York, NY 10110

---

[5] To the extent Defendant complains that it was unable to depose third-party witness Gary Salles, this was admittedly not the result of any lack of cooperation on the part of Plaintiffs' counsel but due the fact that his current whereabouts are unknown.  Opposition at page 16.