## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHARLES SEWARD, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  08 CIV 3976 |
| v. | ) | KMK/MDF |
| | ) | |
| INTERNATIONAL BUSINESS MACHINES, CORP. d/b/a IBM CORP., | ) ) ) | ECF CASE |
| | ) | |
| Defendant. | ) | |

### PLAINTIFFS' RESPONSE TO DEFENDANT'S SUR-REPLY

**Erik H. Langeland**
**ERIK H. LANGELAND, P.C.**
**500 Fifth Avenue, Suite 1610**
**New York, NY 10110**
**(212) 354-6270**
**(212) 898-9086 (Fax)**
**elangeland@langelandlaw.com**

**James B. Zouras**
**Ryan F. Stephan**
**STEPHAN ZOURAS, LLP**
**205 North Michigan Avenue, Suite 2560**
**Chicago, IL 60601**
**(312) 233-1550**
**jzouras@stephanzouras.com**

**Jon A. Tostrud**
**CUNEO, GILBERT & LADUCA, LLP**
**1801 Century Park E., Suite 2400**
**Los Angeles, CA 90067**
**(310) 556-9621**
**jtostrud@cuneolaw.com**

**Attorneys for Plaintiff**

## I.     INTRODUCTION

To facilitate notice, Plaintiffs need only make a modest factual showing that they and other Call Center Representatives ("CCR's") were potentially victims of a common policy or plan that violated the law. *Francis v. A & E Stores, Inc.*, 2008 WL 4619858, *2 (S.D.N.Y. Oct. 16, 2008); *Doucoure v. Matlyn Food, Inc.*, 2008 WL 1771771, *2 (E.D.N.Y. April 15, 2008); *Jacobs v. New York Foundling Hosp.*, 483 F.Supp.2d 251, 265 (E.D.N.Y 2007). Even without the benefit of deposing the bulk of Defendant's affiants, Plaintiffs have demonstrated—and Defendant all but concedes—that hundreds of CCR's at its Atlanta facility routinely followed a policy of working significant pre-shift time without pay. Yet, Defendant continues to argue that notice is inappropriate because: 1) it had a "policy" to pay for all hours worked; and, 2) Plaintiffs are currently unable to prove CCR's in every single one of its teams followed the same practice of working uncompensated pre-shift time. In so doing, Defendant places undue weight on the significance of its written policy, and dramatically exaggerates both Plaintiffs' burden and the relevance of an employer's subdivisions for purposes of notice.

## II.     COURTS HAVE CONSISTENTLY REJECTED DEFENDANT'S ARGUMENTS

Just three weeks ago, a federal district court rejected the very arguments put forth by Defendant here in granting FLSA certification in another call center case with remarkably similar facts. *Bishop v. AT & T Corporation*, 08-cv-468 (W.D.Pa. Feb. 19, 2009) (a copy of which is attached as Exhibit A). Like the CCR's here, the CCR's in *Bishop* alleged they were not paid for 15-60 minutes of required daily pre-shift work booting up their computers and starting software applications. *Id.* at 3-4 & 9. As the Defendant attempts here, the employer in that case sought to defeat conditional certification by pointing out that no written policy or directive compelled such pre-shift work. *Id.* at 9-10. In rejecting this argument, the Court relied upon the testimony of the

opt-ins which detailed the "contradictory interplay" between the Defendant's expectation that CCR's be ready before the start of their shift and failure to pay until their shift began. *Id.* It was the defendant's actual practices the Court found significant, not its written policies which purportedly complied with the FLSA. *Id.*

Here, Plaintiffs' evidence concerning Defendant's requirement of pre-shift work is even more compelling than what the Court found sufficient to issue notice in *Bishop.* Unlike that case, Plaintiffs here, even with only scant discovery, have now uncovered three written directives authored by three different members of Defendant's management specifically instructing CCR's on several different teams to perform mandatory pre-shift work. This work is necessarily performed before CCR's scheduled start time, the time Defendant's timekeeping system presumes CCR's begin work for purposes of compensation. Though Defendant complains that none of the emails Plaintiffs have so far uncovered specifically contain an explicit directive to violate the FLSA by working "off-the-clock" (Sur-Reply at 2), neither the Court in *Bishop* nor any other court has ever found the existence of an illegal written policy a necessary prerequisite to the facilitation of notice. *Id.* at 10; *Monnel v. Department of Social Services,* 436 U.S. 658, 690-91 (1978).

Defendant also continues to improperly suggest that variations in "pre-shift reporting rules" among Defendant's teams at the Atlanta facility somehow render notice inappropriate. (Sur-Reply at 2). As an initial matter, Defendant's admitted "inability" to locate and produce Vicki Reidy's email demonstrates it cannot verify what written directives its own management may have given its various teams. (Exhibit B, February 23, 2009 letter from defense counsel at page 2). This void of information casts serious doubts on its contention—which is supported solely by the declarations of current managerial employees—that its policies on pre-shift work actually vary by team.

Even if Defendant could credibly establish that some CCR's may not have actually worked any pre-shift time without compensation, it would not defeat the issuance of notice.  Proof of a common policy does not demand a showing that all work situations are identical, that everyone is actually injured by the policy or that everyone states a valid claim.  *E.g., Dole v. Solid Waste Servs.*, 733 F.Supp. 895, 902 (E.D. Pa. 1980).  Accordingly, as the Bishop Court held, the fact that putative class members may work in different locations is not determinative.  *Bishop*, 08-cv-468 at 9 & 11-12.  The Bishop Court rejected the defendant's assertion that different policies, procedures and job duties among CCR's negated plaintiffs' contention that they were subject to a common policy of denying payment for pre-shift work.  Indeed it held that AT & T's policy that workers be "call ready" at their start times commonly victimized call center workers:

> Although AT & T identifies differences in the job functions of some potential opt-in plaintiffs, particularly that some had duties beyond handling customer calls, it does not dispute the basic claim that call center employees believed it necessary to be logged into their computers at the beginning of their scheduled tours to meet AT & T's performance expectations.  Bishop has already demonstrated, under the modest factual showing standard, that AT & T's corporate policy that workers be "caller-ready" at the start of their scheduled tour commonly victimized call center workers.  ***Any dissimilarities in job functions which would exclude a class member will be reevaluated at stage two when discovery is complete***.

*Id.* at 13 (emphasis added).

The Court relied upon the line of cases which hold that geographic location is not a significant factor in determining the propriety of notice.  *Id.* at 11-12 (citations omitted).  Again, Plaintiffs' showing here is far more persuasive than in *Bishop*.  Unlike the plaintiffs in *Bishop*, who were granted leave to send notice to four separate call centers, Plaintiffs here seek to issue notice to CCR's working under the same roof where it is undisputed that hundreds of them were subject to Defendant's policy that they be call ready at their designated start times, thus requiring that they arrive early, boot up their computers, and launch the required applications to do their

jobs without pay.

### III.  THE LIMITED ELECTRONIC DATA PRODUCED BY DEFENDANT SUPPORTS PLAINTIFFS' CLAIMS

Finally, Defendant misconstrues the purpose of the spreadsheets and charts prepared by Plaintiffs which compile a sample of the limited electronically-stored data produced to date. These compilations were never intended to serve as a definitive record of the exact times worked by CCR's because no such records exist.  In fact, by not recording *any* of CCR computer log-in times, including any of the pre-shift time they indisputably worked preparing to "be ready" at the start of their scheduled shift, Defendant has already conceded that such records do not exist.  This record-keeping failure stands in direct violation of the FLSA.  29 C.F.R. §516.2(a)(7); (*See* Exhibit 17 to Plaintiff's Initial Motion, November 20, 2008 email of defense counsel).  Defendant's concession that it also does not accurately record time when CCR's are on lunch breaks (Sur-Reply at 4) only emphasizes the abysmal state of its time and record-keeping practices.[1]

Plaintiffs' spreadsheet confirms Defendant fails to record any computer log-in time.  (*See* Plaintiffs' Reply Brief at Exhibit B).  It also shows Defendant maintains at least some "badge swipe" data which can assist in showing CCR's arrive for work well in advance of their scheduled shift to begin preparing to handle customer calls.  (*See* Exhibit C, February 2, 2009 email of defense counsel). Finally, the data confirms that opt-ins were paid little or no overtime despite the uncontested testimony, emails and evidence showing that required pre-shift time went unrecorded on a class-wide basis.  (*See* Plaintiffs' Reply Brief at Exhibit C).  The testimony has been clear that CCR's badge into the facility, go to their assigned work stations, log onto their computers, launch necessary programs, and only just before their designated start times do they log into the phone system.  Barday Dep., pp. 21-29; Liles Dep., pp. 32-37; 48-49; Scott Dep., pp. 47-48; 54-57.  CCR's are not paid overtime for

---

[1] Remarkably, Defendant contends that Plaintiffs should "account" for these lunch breaks even though the

the time their pre-shift work.  Barday Dep., pp. 58-59; Liles Dep., p. 51; Scott Dep., 24.[2]  Ms. Barday testified that her manager, Kerry Bethea, required her team to work this pre-shift time without overtime pay.  Barday Dep., Vol. II, p. 150.  Team leads, including Kim Gunn and Fred Nutter, instructed Mr. Liles not to record his pre-shift work, thus depriving him of overtime pay.  Liles Dep., pp. 49, 55.  Mr. Scott testified that: 1) he was instructed during his training to work pre-shift time without pay and 2) *all* of his managers, including Juanlyn Williams, Samantha Stewart, Dana Trahan, Peter Zurita, and others, required him to work-the-clock in this manner.  Scott Dep., pp. 54-57.  Mr. Starkey confirmed that George Lambousis, George Pullon, and Juanita Carver, required that he work pre-shift time without overtime and that his managers, including Mr. Lambousis, Mr. Coy, Mr. Lewis and Ms. Carver, knew that he arrived early and performed unpaid work.  Starkey Dep. Vol. I, pp. 50, 64-68; Vol. II, pp. 86-88.  That these opt-ins should all be subject to same illegal policy at the hands of more than ten "rogue managers" is more than a bizarre coincidence.  This data, along with all the evidentiary facts set forth by Plaintiffs, provide this Court with a reasonable basis for finding that a class of similarly-situated CCR's exist and are entitled to an opportunity to join.

## IV.   CONCLUSION

Plaintiffs request that their motion for conditional certification be granted.

Dated: March 9, 2009                             Respectfully Submitted,

                                                 /s/ Erik H. Langeland
                                                 Erik H. Langeland
                                                 ERIK H. LANGELAND, P.C.
                                                 500 Fifth Avenue, Suite 1610
                                                 New York, NY 10110

---

responsibility for accurately recording all time worked falls squarely on the employer. 29 C.F.R. §516.2(a)(7).
[2] Relevant deposition transcripts are attached as exhibits to Plaintiffs' Memorandum Of Law In Support of Their Motion To Proceed As A Collective Action.