UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CHARLES SEWARD, Individually, and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**INTERNATIONAL BUSINESS MACHINES CORPORATION D/B/A IBM CORP.,**<br><br>**Defendant.** | **08 CIV 3976 (KMK)**<br><br>ECF CASE<br><br>PARTIES' SECOND-PHASE RULE 26(F) REPORT |

On February 22, March 4, and March 8, 2010, Named Plaintiff Charles Seward ("Named Plaintiff" or "Seward") and Defendant International Business Machines Corporation ("IBM" or "Defendant") conferred pursuant to Federal Rule of Civil Procedure 26(f). The parties hereby submit the following second-phase Rule 26(f) report.

1.  Claims, Defenses, and Procedural History:

On April 28, 2008, the Named Plaintiff filed this action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), contending that Defendant did not record, or compensate him for, all overtime hours worked. On July 21, 2009, the Court conditionally certified for notice purposes a class of nonexempt call center employees at IBM's Riveredge call center facility in Atlanta, Georgia, whose duties primarily consist (or consisted) of providing customer service by telephone in the three years prior to issuance of notice. On July 30, 2009, the Court approved the final form of the notice to be mailed to the FLSA putative class members informing them of their right to file consent-to-join forms pursuant to 29 U.S.C. § 216(b). On August 6, 2009, Seward's counsel mailed the notice. The opt-in period for putative class members expired

on November 4, 2009.  There are 46 opt-in plaintiffs, including Seward, currently before the Court.  IBM asserts that one of the opt-in plaintiffs does not meet the class definition because she was not an employee of Defendant and should be dismissed from the case without prejudice.  Seward has requested documentation confirming the individual's non-employee status, which Defendant agreed to provide.  The parties will meet and confer about the status of this person and bring any dispute to the Court's attention.  Another 3 of the 46 individuals meet the class definition, but filed consent-to-join forms subsequent to the opt-in deadline (the "Late-Filed Opt-Ins").  Therefore, the opt-in class consists of 45 individuals or, if the Court dismisses the Late-Filed Opt-Ins, 42 individuals (assuming the parties agree to dismiss the person who Defendant represents is a non-employee).

2.      Late-Filed Opt-Ins:

There is a dispute between the parties as to whether the Late-Filed Opt-Ins may participate in this action.  On January 12, 2010, Defendant submitted to the Court a pre-motion conference letter requesting permission to file a motion to dismiss the Late-Filed Opt-Ins from the action.  Named Plaintiff submitted a response on January 15, 2010, and the Court held a hearing on Defendant's request on February 23, 2010.  At the hearing, the Court ordered Seward to show good cause on or before March 16, 2010 why the Late-Filed Opt-Ins should be allowed to join the suit.  Defendant's response is due March 30, 2010, and Seward's reply is due April 9, 2010.

3.      Commencement of Second-Phase Discovery/Scope/Duration:

A six-month period of Second-Phase discovery will commence on the date that the Court enters a ruling on whether the Late-Filed Opt-Ins may participate in the instant lawsuit (the "Second-Phase Discovery Start Date").  The parties, however, may agree to conduct discovery

prior to the Second-Phase Discovery Start Date.  Second-Phase discovery will be related to the following motions ("Second-Phase Motions"): (i) Defendant's anticipated motion to decertify the FLSA opt-in class, and (ii) the parties' respective motions for summary judgment, if any, limited to whether any opt-in plaintiff's claims are barred by an affirmative defense (such as statute of limitations) or failure to satisfy the class definition (at the option of the moving party, any summary judgment motion described in this Paragraph 3(ii) can be brought instead at a later stage of the proceeding).

4.  Rule 26(a) Disclosures:

The parties will exchange Second-Phase Rule 26(a)(1) disclosures within 30 days after the Second-Phase Discovery Start Date.

The parties agree to disclose experts related to Second-Phase Motions and all information specified in Rule 26(a)(2) according to the following schedule:

| Named Plaintiff's expert disclosures: | Within 90 days after the Second-Phase Discovery Start Date |
|---|---|
| Defendant's expert disclosures: | Within 120 days after the Second-Phase Discovery Start Date |

Any experts disclosed pursuant to this paragraph may be deposed during the Second-Phase discovery period and such depositions shall not count towards the limits described in Paragraph 9(b).

5.  Electronically Stored Information:

Defendant will produce electronically stored information in the same form as its First-Phase productions.

6.  Claims of Privilege:

The Court's October 10, 2008 Protective Order contains a "claw back" agreement that will continue to govern during Second-Phase discovery and through trial.

7.  Discovery Limitations:

The limitations on discovery imposed by the Federal Rules and the Local Rules should be applied to Second-Phase discovery, except as specifically modified herein.

8.  Rule 26(c) Orders:

The Court's October 10, 2008 Protective Order will continue to govern during Second-Phase discovery and through trial.

9.  Proposed Discovery Plan:

a.  Written Discovery/Document Production. To the extent that it has not already done so, Defendant has agreed to produce within 30 days after the Second-Phase Discovery Start Date (or, in the case of category (iii) below, within 30 days after disclosure of the witness), for the (i) Named Plaintiff, (ii) each opt-in plaintiff that the Court deems eligible to participate in the case, and (iii) any witness from whom Defendant intends to offer testimony in support of any Second-Phase Motion and who falls within the definition of the putative class but did not opt in to the litigation, the following documents and data, to the extent they exist and for times during which each respective person held a covered position (*i.e.*, position codes 824B, 8440, 651A, 651F) during his/her individual claim period or, as to individuals in category (iii), the times during which each person held a covered position between August 6, 2006 and August 6, 2009: personnel jacket, payroll data, CLAIM data, phone log in and log out data, eTOTALS timecards, and badge data.

Defendant also agrees to produce on a rolling basis starting 30 days after the Second-Phase Discovery Start Date non-privileged documents from the Named Plaintiff and eligible-to-

participate opt-in plaintiffs' server e-mail files, to the extent such files exist, that satisfy agreed-upon search criteria (attached as Exhibit 1) and are from the time in which each person held a covered position during his/her individual claim period.  In addition, on the same time table, Defendant will produce desk files regarding the Named Plaintiff and each eligible-to-participate opt-in plaintiff that are maintained by their respective first-line managers during the time in which the Named Plaintiff and each opt-in plaintiff held a covered position during his/her individual claim period.

For its discovery, Defendant may serve no more than 10 requests for production of documents and 5 interrogatories, subject to the limitations of Local Rule 33.3, on the Named Plaintiff and on each opt-in plaintiff.  In addition, Defendant may serve on the Named Plaintiff an additional 5 requests for production of documents and an additional 5 interrogatories not subject to the limitations of Local Civil Rule 33.3.  The parties have met and conferred over the content of these requests and interrogatories.  Attached as Exhibit 2 are (i) a sample of the unopposed requests for production and interrogatories to be served on the Named Plaintiff and each of the opt-in plaintiffs, and (ii) the unopposed additional five requests for production and interrogatories to be served only on Named Plaintiff.

The parties agree to work cooperatively to schedule depositions beginning after the discovery in this Paragraph 9(a) is completed.

  b. <u>Depositions of Opt-Ins/Defendant's Employees</u>.

  (1) The parties disagree about the number of opt-in plaintiffs that Defendant should be permitted to depose in Second-Phase discovery.

**Named Plaintiff's Position**:  Named Plaintiff has agreed to allow Defendant to propound individualized written discovery on each opt-in plaintiff.  However, Defendant also seeks to

depose 20 of the opt-in plaintiffs *in addition* to the five it has already deposed (25 out of 42 timely opt-ins). If permitted, such discovery would completely undermine the litigation efficiency goals that are central to the purpose of collective actions, without any significant corresponding benefit. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (collective actions are designed to lower individual litigation costs and benefit the judicial system by providing for "efficient resolution in one proceeding of common issues of law and fact"); *Reab v. Elec. Arts, Inc.,* 214 F.R.D. 623, 627 (D. Colo. 2002) (same); *see also Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 67 (2nd Cir. 1997) (***representative testimony appropriate for calculating FLSA damages);*** *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701-02 (3rd Cir. 1994) (same)***;*** *Donovan v. Burger King Corp.*, 672 F.2d 221, 224-25 (1st Cir. 1982) (***representative testimony appropriate for determining FLSA liability).*** The use of representative testimony is a long-standing and widely accepted practice used to establish FLSA liability without requiring the testimony of all, or even a substantial number, of the opt-in plaintiffs. Courts typically allow the testimony of representative employees to prove FLSA violations with respect to all employees. *Reich,* 121 F.3d at 67; *Reich*, 13 F.3d at 701-02. In *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 67 (2nd Cir. 1997), the Second Circuit held that it is not necessary to "present testimony from each underpaid employee; rather, it is well-established that [the Plaintiff] may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA." Similarly, here, Plaintiffs will prove their claims using Defendant's own records, policies, and testimony of representative employees. *Id*. (citing *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 86 (10th Cir. 1983) (testimony of 12 employees sufficient to support award for all former employees); *Williams Oil Co.,* 717 F.2d at 504-505 (testimony of 19 attendants sufficient

to establish pattern of hours worked for 34 attendants at nine separate stations); *GMAC*, 482 F.2d at 829 (testimony of 16 employees sufficient to support award for all 37 employees); *Marshall v. Brunner*, 500 F. Supp. 116, 122 (W.D. Pa. 1980) (testimony of forty-eight truck drivers working varying hours and receiving different amounts of pay sufficient to support award to 93 employees).

Rule 30 of the Federal Rules of Civil Procedure requires parties to obtain leave of court before taking more than 10 depositions. Fed. R. Civ. P. 30(a)(2)(A). That rule also permits courts to grant leave but only to the extent that doing so is consistent with the principles stated in Rule 26(b)(2). Thus, discovery in class or collective actions, as in any other federal case, is guided by Rule 26(b)(2), which requires a court to limit discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive" as well as discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2).

Here, the discovery sought by Defendant would be unreasonably cumulative or duplicative, because the only issue in which individualized discovery of opt-in plaintiffs is appropriate is damages, and the Plaintiff already focused on this issue by permitting all the opt-in plaintiffs to respond to interrogatories on the number of overtime hours they worked. *Adkins v. Mid-Am. Growers, Inc.,* 141 F.R.D. 466, 468 (N.D. Ill. 1992) (denying individualized discovery in an FLSA action, because "the ideas of a class action and individualized discovery do not fit together well"). Here, the Plaintiff already agreed to an alternative means of discovery by allowing all opt-in plaintiffs to respond to interrogatories and document requests.

FLSA cases in which courts have addressed requests for individualized discovery reflect this case-specific, need-driven analysis. Some district courts have prohibited any individualized discovery of opt-in plaintiffs in collective actions. *See McGrath v. City of Philadelphia*, 1994

WL 45162, at *3 (E.D. Pa. 1994); *Adkins v. Mid-Am. Growers, Inc.,* 143 F.R.D. 171, 174 (N.D. Ill. 1992); *Adkins v. Mid-Am. Growers, Inc.*, 141 F.R.D. 466, 468 (N.D. Ill. 1992). The majority of district courts to be faced with this issue have taken a middle path, permitting only limited written discovery of opt-in plaintiffs or full discovery (including depositions) from a minority sub-set of the collective action members only. *See, e.g., Moss v. Crawford & Co.,* 201 F.R.D. 398, 400 (W.D. Pa. 2000) (denying a motion to decertify after depositions were taken of 24 out of 74 FLSA collective action members); *Lusardi v. Xerox Corp.,* 118 F.R.D. 351, 354 (D.N.J. 1987) (parties used 51-person sample of class of over 1,300 opt-in plaintiffs); *Smith v. Lowe's Home Centers, Inc.,* 236 F.R.D. 354, 357-358 (S.D. Ohio 2006) (where the defendant propounded interrogatories and requests for production of documents to each of 1,500 opt-ins, and the plaintiffs moved for a protective order, the district court held that "limiting discovery to a statistically significant representative sampling, at this juncture, will both reasonably minimize the otherwise extraordinary burden imposed on the plaintiffs and their counsel and yet afford the defendant a reasonable opportunity to explore, discover and establish an evidentiary basis for its defenses."); *Bradford v. Bed Bath & Beyond, Inc.,* 184 F. Supp. 2d 1342 (N.D. Ga. 2002) (allowing discovery from 25 of 300 opt-in plaintiffs); *see also Adkins*, 141 F.R.D. at 468 (reversing magistrate's order for individual discovery and suggesting that a "sample of certain representative plaintiffs might be drawn to assess the situation more accurately"); *Adkins*, 143 F.R.D. at 174 (depositions and interrogatories on a representative basis); *Long v. Trans World Airlines*, 761 F. Supp. 1320, 1323 (N.D. Ill. 1991) (ordering calculation of damages through use of a "sampling method"); *Brooks v. Farm Fresh, Inc.,* 759 F. Supp. 1185, 1187-88 (E.D. Va. 1991), *rev'd on other grounds sub nom. Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142 (4th Cir. 1992) (discovery of opt-ins

permitted but only until either side felt the record sufficiently developed to answer the "similarly situated" question).

Here, allowing Defendant the opportunity to depose a total of ten opt-in plaintiffs (approximately 24% of the timely opt-ins), in addition to the written discovery that the opt-in Plaintiffs must answer, is more than sufficient. Representative discovery is analogous to representative testimony at trial, and in FLSA cases, "it is not necessary for every single affected employee to testify in order to prove violations or recoup back wages" and "the testimony and evidence of representative employees may establish prima facie proof of a pattern and practice of FLSA violations." *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1298 (3rd Cir. 1991) (citing multiple cases where representative testimony was adequate in collective action trials).

Conducting an additional 20 depositions just of opt-in plaintiffs will impose a huge burden of time and expense that is simply not necessary, given that the courts have repeatedly instructed that FLSA collective actions are to be tried on a representative basis. *See McGrath v. City of Philadelphia*, 1994 WL 45162, at *3; *Adkins*, 141 F.R.D. at 468 (individual discovery would place "a tremendous burden on Adkins' counsel"). Moreover, the public policy considerations implicate the same concern; such a strategy will discourage the filing of future FLSA collective actions. Moreover, the relevant information sought by Defendant is already in its possession, making the burden/necessity balance tilt even more sharply in Plaintiff's favor. Defendant does not and cannot demonstrate any particularized need for the incredibly broad discovery it seeks. Defendant's position becomes all the more unreasonable given that each of the opt-in Plaintiffs must respond to its written discovery.

Defendant already controls (or should control, if it properly preserved its time-keeping records pursuant to 29 C.F.R. § 516.6), great repositories of evidence related to each individual

Plaintiff's job duties, work, and hours worked. It is undisputed that every Opt-In Plaintiff held the same job, performed the same job duties, and was subject to the same job requirements. If more than a fair sampling of opt-in plaintiffs in an FLSA action were subject to full discovery simply because they opted-in as a "party plaintiff," the collective action's goals of efficiency and judicial economy would be completely negated.

Defendant has each opt-in plaintiff's personnel file, (which contains performance evaluations, file review documents, self-assessments, correspondence between the collective action members and their managers and supervisors, and other materials). Defendant also has direct access to all supervisory personnel of the opt-in plaintiffs; persons who can provide evidence as to the duties and work performed by the collective action members under their watch. Further, Defendant possesses all of the badge swipe, computer and telephone log-in, log-out and other data of all the collective action members recording when they arrived at work, when they started their computers and software applications and handled telephone calls at work. Each of the Plaintiffs that have been deposed uniformly testified that they were required to work unpaid pre-shift overtime.  In addition, Gary Kamprath—whose sole job at IBM job is to study call center patterns to maximize staffing efficiency—testified that CCR's all answer customer telephone calls and either resolve a question or pass the information on to be acted on. Kamprath Dep., pp. 97-98.  Defendant's suggestion that vast differences exist from team to team ignores the fact that the primary job duty of a CCR is "answering the phones."   Kamprath Dep., p. 98.  Defendant further attempts to complicate this case—which in its simplicity boils down to how long before their designated start-time CCR's arrived and started working—by seeking intricate information about the functions of particular call teams within IBM's call

center. This information adds nothing to the analysis of whether CCR's worked pre-shift overtime and is sought merely for the purpose of confusing the issue.

Under these circumstances, the burden of requiring each opt-in plaintiff to submit to a deposition cannot be justified by Defendant's purported need to find "decertification" evidence (*i.e.,* to establish differences between the collective action members and the named Plaintiffs).

**Defendant's Position***:* Before notice was issued on August 6, 2009, the class included Seward, and 5 additional opt-ins, Cathy Barday, Eugene Scott, Sebrina Carstarphen, James Starkey, and Raymond Liles. In the initial stage of discovery, which was focused on developing the parties' respective positions on conditional certification, Defendant deposed Seward and four opt-ins, Barday, Scott, Starkey, and Liles.[1]

On August 6, 2009, notice was issued to 663 current and former employees at Defendant's Riveredge facility. The 42 timely opt-ins represent roughly 6.3% of the total putative class. (If the Late-Filed Opt-Ins are allowed to participate, the percentage is roughly 6.7%.) Defendant seeks to depose twenty of the opt-ins (in addition to those already deposed) and has agreed to limit the depositions to four hours each, subject to an agreement that the parties would in good faith discuss the extension of the four-hour time limit on a case-by-case basis if necessary. Defendant seeks these depositions in order to prepare its motion for decertification. Courts routinely allow defendants to depose a sufficient number of class members to prepare their defenses. Indeed, courts have often allowed far more depositions than those requested by

---

[1] Carstarphen was not willing to be deposed and the parties agreed that Defendant would forego her deposition during the initial stage if Named Plaintiff agreed not to submit a declaration from Carstarphen in support of his motion for conditional certification.

Defendant here. *See*, *e.g.*, *Brooks v. Farm Fresh, Inc.,* 759 F. Supp. 1185, 1188 (E.D. Va. 1991) (allowing 127 depositions for assessment of whether plaintiffs were similarly situated); *Kaas v. Pratt & Whitney*, 1991 WL 158943, at *5-6 (S.D.Fla. Mar. 18, 1991) (approximately 100 depositions). While cases involving larger classes than is present here sometimes involve a smaller *percentage* of opt-ins subject to deposition, courts also recognize that, where the class is relatively small, a higher percentage of depositions is justified to allow the Defendant to properly prepare its defense. *See*, *e.g.*, *Reckitt & Colman Inc.*, 1994 WL 652534 (S.D.N.Y. 1994) (allowing depositions of named plaintiff and all 49 opt-ins in case brought under the ADEA)*; Conzo v. City of New York*, __ F. Supp. 2d __, 2009 WL 3415371 (S.D.N.Y. Oct. 23, 2009) (while not directly addressing the issue, opining that it could not make a determination as to whether plaintiffs were similarly situated for purposes of an FLSA collective action "given the small percentage of plaintiffs deposed and the significant differences in their testimony"; noting that 20 plaintiffs out of 1,478 (just 1.3%) had been deposed).

Here, Defendant requests twenty depositions so it can properly prepare its motion to decertify the current class. Courts have recognized that the following factors, among others, are relevant to such a motion: (1) the opt-ins' testimony regarding their knowledge of relevant policies, (2) the opt-ins' personal experiences regarding alleged off-the-clock work with each manager, including communications from each manager regarding overtime and expectations, and (3) the opt-ins' particular work experiences and circumstances during the relevant time periods. The opt-ins here worked for twenty-two different first-line managers on at least seventeen different teams. The various teams had different requirements, functions, and job duties. Moreover, some opt-ins on the same teams had different job duties. To adequately explore whether the opt-ins are in fact similarly situated under these varying scenarios with

respect to the cited factors (as well as other relevant factors), Defendant should be permitted to depose a sufficient number of opt-ins to, among other things, examine their respective experiences under different managers and on different teams and with different job duties. Defendant respectfully contends that twenty depositions will allow it to adequately make this examination and prepare its motion for decertification. And in light of the agreed four-hour time limit for each deposition, Seward cannot legitimately argue that the requested depositions are unduly burdensome.

Seward cites nothing to dispute IBM's basic point that in a case with fewer opt-ins, a higher percentage of depositions is justified, especially where, as here, the opt-ins worked for twenty-two different first-line managers on at least seventeen different teams. Instead, Seward claims that IBM should be limited to a *total* of ten depositions (including the five already taken) because Seward has agreed to allow IBM to serve written discovery on all of the opt-ins. Seward, however, ignores just how skeletal IBM's written discovery, in fact, will be. IBM will serve a total of two interrogatories on each opt-in. (Exhibit 2.) These two interrogatories, which comply with Local Rule 33.3, merely seek (i) the name of each manager or supervisor the opt-in reported to and the name of the team or group to which the opt-in belonged, and (ii) the identity and location of relevant documents. These interrogatories *do not* ask about job duties, work expectations, whether the opt-in supposedly worked off-the-clock and, if so, why, the opt-in's understanding of policy, or any of the other issues that are key to the "similarly situated" inquiry.

Rather, Defendant seeks to probe these issues through a limited number of four-hour depositions.[2] IBM, likewise, will serve just six document requests on the opt-ins. (*Id.*)

Moreover, many of Seward's cases are inapposite. First, as he concedes, these cases address the "use of representative testimony . . . .to establish FLSA liability without requiring the testimony of all, or even a substantial number, of the opt-in plaintiffs." This puts the cart before the horse. The issue currently before the Court is not the use of representative testimony at trial to establish liability, but instead is whether Seward and the opt-ins are similarly situated under the stringent standard applied at the decertification stage. None of these cases addresses the appropriate number of depositions during decertification-related discovery.

Second, these cases are inapposite because the U.S. Department of Labor was the plaintiff. *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2d Cir. 1997); *Reich v. Gateway Press, Inc.*, 13 F.3d 687 (3d Cir. 1994); *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 86 (10th Cir. 1983); *Donovan v. Williams Oil Co.*, 717 F.2d 503 (10th Cir. 1983); *Donovan v. Burger King Corp.*, 672 F.2d 221 9 (1st Cir. 1982); *Marshall v. Brunner*, 500 F. Supp. 116 (W.D. Pa. 1980). In such cases, unlike the present case, the "similarly situated" issue was at no time before the court. Unlike private plaintiffs, such as Seward, the Department of Labor is not required to make a threshold showing that a group of employees is similar situated as a prerequisite to reaching questions of liability.

Third, even if this Court believes that the cited cases are somehow relevant, such cases are distinguishable on their facts because, in allowing representative testimony, these courts

---

[2] Nor do the interrogatories ask about the number of hours allegedly worked off-the-clock.

noted that the employees who did testify provided *consistent* testimony about their work experiences and about the defendant's alleged violations.  *See, e.g.*, *Southern New England Telecommunications*, 121 F.3d at 68 ("we are untroubled by the quantum of representational evidence in this case because . . . there was actual consistency among those workers' testimony"); *Gateway Press*, 13 F.3d at 701 ("All of these employees gave virtually identical testimony about the pattern and practice of hours worked at Gateway."); *Burger King*, 672 F.2d at 225 ("The court found that all of the testimony thus far had been 'substantially the same,' and counsel for Burger King agreed with this both at trial and in the stipulation.").

      Here, the case is far different.  Seward has conceded that IBM had a lawful policy, uniformly in force and widely disseminated, that prohibits off-the-clock work and that specifically said that boot-up time is compensable.  (Docket Entry 45, Plaintiffs' Memorandum Of Law In Support Of Their Motion To Proceed As A Collective Action And To Facilitate Notice Under 29 U.S.C. § 216(b), at pp. 8-9.)  Against this backdrop, Seward and the opt-ins deposed to date show great variation in the basis for their claims.  Seward testified that he did, in fact, record overtime for pre-shift work, that no manager ever told him not to record his boot-up time, and that, on the occasions when he allegedly did not record pre-shift work time, it was because no manager hold him that he *should* record the time.  (Transcript of July 21 Oral Argument, attached as Exhibit 3, at pp. 12-13.)  Opt-In Liles, by contrast, said that he thought that an alleged instruction from his manager not to log in to the *phone* until the start of his shift was, in essence, also an instruction not to record the *computer* boot-up time.  (*Id.* at p. 13.)  Scott, another opt-in, testified that certain managers told him not to record his boot-up time, but these managers worked with him in a different facility before he worked at the Riveredge facility in Atlanta, the only facility at issue in this case.  (*Id.*)  With respect to Riveredge, Scott testified that

no one ever told him not to record his boot-up time. (*Id.*) And Starkey, another opt-in, claimed that a Riveredge manager directly told him not to record his boot-up time. (*Id.*) Given such variation in testimony, even among the limited group of Seward and his pre-notice, hand-picked opt-ins, limiting deposition testimony in the manner requested by Seward is inappropriate.

Specifically, IBM, to date, has deposed *none* of the opt-in plaintiffs who joined the case through the Court-facilitated notice process. IBM, therefore, is unable to determine whether any of the post-notice opt-in plaintiffs' allegations line up with any of the people deposed to date and whether the new opt-ins' experiences are just as varied as the people already deposed. And it is no answer to say, as Seward does, that IBM can consult its own documents and data to learn this information. Again, Seward fully concedes that IBM's policy is fully lawful.

Seward also claims that "[c]onducting an additional 20 depositions just of opt-in plaintiffs will impose a huge burden of time and expense that is simply not necessary." Plaintiff omits that all of the opt-ins are in Atlanta, Georgia, that Defendant has agreed to a four hour limit for such depositions, and that Defendant has offered to conduct these depositions in a single trip to Atlanta. Indeed, the parties have discussed the fact that four depositions can be taken in a day, allowing all depositions to be completed in a single week. Further, it is disingenuous for Seward to argue that conducting a mere 20 depositions in one city would be burdensome to his counsel, who represent themselves as having "a nationwide team of exceptional co-counsel." Website of Stephan Zouras LLP, www.stephanzouras.com (last accessed March 18, 2010). Presumably, Seward's counsel has the resources to defend a single week of depositions in a single city.

Although Seward points to some FLSA collective actions to argue that courts typically permit "only limited written discovery of opt-in plaintiffs or full discovery (including depositions) from a minority sub-set of the collective action members only," such cases involve a greater

number of opt-ins than are present here.  *See, e.g.*, *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987) (1,300 opt-ins); *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354 (S.D. Ohio 2006) (1,500 opt-ins); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342 (N.D. Ga. 2002) (300 opt-ins).

To clarify Seward's position, he seeks to limit IBM to a *total* of ten depositions, *including* the five already completed.  Accordingly, he asks the Court to allow Defendant to depose just five of the thirty-six opt-in plaintiffs who joined the case after notice was issued.  For the foregoing reasons, this limitation is not fair or appropriate.

(2)     Named Plaintiff will be limited to deposing the same number of total individuals as Defendant.  Defendant will produce identified individuals who are current IBM employees.  Defendant will also make reasonable efforts to produce identified former IBM employees.

(3)     Depositions during Second-Phase Discovery will be limited to 4 hours per depositions, subject to the parties' agreement to discuss in good faith the extension of the four-hour limit on a case-by-case basis if necessary.

c.     <u>Depositions of Witnesses Identified in Supplemental Rule 26(a) Disclosures.</u>

Within 90 days after the Second-Phase Discovery Start Date, the parties shall supplement their Rule 26(a)(1) initial disclosures by identifying all witnesses from whom they intend to offer testimony in support of any Second-Phase Motion.  The parties may depose the opposing party's disclosed witnesses, and these depositions will not count toward the deposition limits in Paragraph 9(b).  These depositions must be conducted before the end of Second-Phase Discovery.  The parties may not submit testimony in support of or in opposition to any Second-Phase Motion from any witness unless he or she was disclosed pursuant to this paragraph.

  d. <u>Use of Documentary Evidence.</u>

The parties may not submit documentary or other non-testimonial evidence in support of or in opposition to any Second-Phase Motion unless such evidence was disclosed within 120 days after the Second-Phase Discovery Start Date.

10. <u>Motion Schedule:</u>

The parties propose the following schedule for Second-Phase Motions. The parties also seek waiver of this Court's Individual Practice requiring the submission of a pre-motion conference letter prior to the filing of such motions.

| | |
|---|---|
| Motion for Decertification: | 45 days after close of Second-Phase discovery |
| Dispositive Motions (If Any): | 45 days after close of Second-Phase discovery |
| Opposition to Motions for Decertification: | 90 days after close of Second-Phase discovery |
| Oppositions to Dispositive Motions: | 90 days after close of Second-Phase discovery |
| Reply In Support of Decertification: | 120 days after close of Second-Phase discovery |
| Replies in Support of Dispositive Motions: | 120 days after close of Second-Phase discovery |

11. <u>Post-Certification Conference and Trial:</u>

Within 10 business days after the Court's ruling on Second Phase Motions, the parties will hold an additional Rule 26 conference to discuss all relevant Rule 26 and Rule 16 issues in the case, including the amount of time necessary for merits and damages discovery, setting of a trial date, expert discovery for trial purposes, deadlines for class-wide dispositive motions, deadlines for any dispositive motions not previously sought, the filing of pre-trial motions and papers, and the setting of trial related deadlines. The parties shall report to the Court in writing within 10 business days after their meeting.

12. <u>Jury Trial Request:</u>

There has been a request for a jury trial.

13.     Settlement Discussions:

The parties have discussed potential approaches for exploring settlement.  These discussions are on-going.

Dated:  March 19, 2010

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s James B. Zouras | /s Craig S. Friedman |
| _____ | _____ |
| Erik H. Langeland<br>elangeland@langelandlaw.com<br>ERIK H. LANGELAND, P.C.<br>500 Fifth Avenue, Suite 1610<br>New York, New York 10110<br>Telephone: (212) 354-6270 | Matthew W. Lampe<br>mwlampe@jonesday.com<br>Craig S. Friedman<br>csfriedman@jonesday.com<br>JONES DAY<br>222 East 41st Street<br>New York, New York 10017-6702<br>Telephone: (212) 326-3939 |
| James B. Zouras<br>jzouras@stephanzouras.com<br>Ryan F. Stephan<br>rstephan@stephanzouras.com<br>STEPHAN ZOURAS LLP<br>205 North Michigan Avenue<br>Suite 2560<br>Chicago, Illinois 60601<br>Telephone: (312) 233-1550 | Matthew W. Ray<br>mwray@jonesday.com<br>JONES DAY<br>2727 North Harwood Street<br>Dallas, Texas 75266-0623<br>Telephone: (214) 220-3939<br><br>Attorneys for Defendant<br>International Business Machines Corporation |
| Jon A. Tostrud<br>jtostrud@cuneolaw.com<br>CUNEO, GILBERT & LADUCA, LLP<br>1801 Century Park East, Suite 2400<br>Los Angeles, California 90067<br>Telephone: (310) 556-9621 | |
| Attorneys for  Named Plaintiff Charles Seward and Opt-ins | |