Matthew W. Lampe
mwlampe@jonesday.com
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939

Matthew W. Ray (*pro hac vice*)
mwray@jonesday.com
Joanne R. Bush (*pro hac vice*)
jrbush@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
(214) 220-3939

Deborah A. Sudbury (*pro hac vice*)
dsudbury@jonesday.com
Craig S. Friedman
csfriedman@jonesday.com
JONES DAY
1420 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 581-3939

Attorneys for Defendant
International Business Machines Corporation

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X
                                                        )
CHARLES SEWARD, Individually and on  )  No. 08 CV 3976 (VB) (PED)
Behalf of All Others Similarly Situated,  )
                                                        )  **ECF CASE**
           Plaintiff,                            )
                                                        )  **MEMORANDUM OF LAW IN**
           -against-                            )  **SUPPORT OF DEFENDANT'S**
                                                        )  **MOTION FOR SUMMARY**
INTERNATIONAL BUSINESS MACHINES )  **JUDGMENT AS TO CLAIMS OF**
CORPORATION,                           )  **PLAINTIFF CHARLES SEWARD**
                                                        )
           Defendant.                         )
                                                        )
                                                        )
------------------------------------------------------- X

ATI-2517563v3

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1
RELEVANT FACTUAL BACKGROUND ............................................................................... 2
I.     IBM'S OVERTIME POLICY AND THE REPORTING OF OVERTIME ...................... 2
II.    PLAINTIFF'S WORK FOR THE TEACH TEAM AND THE SCET TEAM ................. 4
ARGUMENT ................................................................................................................................ 6
I.     AN EMPLOYER IS ONLY LIABLE FOR OVERTIME THAT IT KNEW OR SHOULD HAVE KNOWN THE EMPLOYEE WORKED .............................................. 7
II.    SEWARD CANNOT ESTABLISH ACTUAL OR CONSTRUCTIVE KNOWLEDGE .................................................................................................................. 8
CONCLUSION ........................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Banez v. New York Foundling Hosp.*,
  2001 WL 1035142 (S.D.N.Y. Sept. 7, 2001) ................................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................................................6

*Daniels v. 1710 Realty LLC*,
  2011 WL 3648245 (E.D.N.Y. Aug. 17, 2011) ............................................................1, 7

*Edwards v. City of New York*,
  2012 WL 1694608 (S.D.N.Y. May 15, 2012) ...............................................................7

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
  646 F.2d 413 (9th Cir. 1981) ................................................................................7, 8, 11

*Gaylord v. Miami-Dade County*,
  78 F. Supp. 2d 1320 (S.D. Fla. 1999) ............................................................................8

*Hawthorne v. Sears Termite & Pest, Control, Inc.*,
  309 F. Supp. 2d 1318 (M.D. Ala. 2003) ......................................................................10

*Joza v. WW JFK LLC*,
  2010 WL 3619551 (E.D.N.Y. Sept. 10, 2010) ...................................................... passim

*Kellar v. Summit Seating Inc.*,
  664 F.3d 169 (7th Cir. 2011) .......................................................................................10

*McKnight v. Kimberly Clark Corp.*,
  149 F.3d 1125 (10th Cir. 1998) .................................................................................1, 8

*Meiri v. Dacon*,
  759 F.2d 989 (2d Cir. 1985) .........................................................................................10

*Romero v. H.B. Automotive Grp., Inc.*,
  2012 WL 1514810 (S.D.N.Y. May 1, 2012) .................................................................6

*Seward v. International Bus. Machines Corp.*,
  2012 WL 860363 (S.D.N.Y. Mar. 9, 2012) ...................................................................3

*Scotto v. Almenas*,
  143 F.3d 105, 114 (2d Cir. 1998) ..................................................................................6

**STATUTES**

29 U.S.C. § 203(g) ...................................................................................................................7

29 U.S.C. § 207(a)(1)................................................................................................................7

**OTHER AUTHORITIES**

29 C.F.R. § 785.11 ....................................................................................................................7

Fed. R. Civ. P. 56(c) .................................................................................................................6

ATI-2517563v3

**PRELIMINARY STATEMENT**

Plaintiff Charles Seward ("Plaintiff" or "Seward") claims that Defendant International Business Machines Corporation ("IBM" or the "Company") failed to pay him overtime wages for hours worked in excess of forty in a workweek in violation of the Fair Labor Standards Act ("FLSA"). In particular, Seward, who was a call center representative, alleges that he arrived before the start of his scheduled shift to "boot up" his computer and that IBM did not pay him for this boot-up time. But Seward never recorded this time in IBM's timekeeping system, despite the fact that he considered the time to be compensable, he knew IBM policy required him to record *all* compensable time, and no one told him *not* to record the time. Seward never even raised the issue with IBM management. Rather, without telling anyone what he was doing, Seward allegedly incurred overtime over an extended period and then filed this case to recover it.

The FLSA does not impose liability under such circumstances. "[A]n employee is only entitled to compensation for those hours of work for which the employer had actual or constructive knowledge." *Daniels v. 1710 Realty LLC*, 2011 WL 3648245, at *6 (E.D.N.Y. Aug. 17, 2011). Thus, "[a]lthough the FLSA obligates employers to maintain appropriate overtime records, it is well-established that employers may require employees to follow and adhere to reasonable procedures for reporting overtime worked, and may rely upon what employees report, and do not report." *Joza v. WW JFK LLC*, 2010 WL 3619551, at *10 n. 5 (E.D.N.Y. Sept. 10, 2010). Summary judgment is warranted where "uncompensated time was the result of [the plaintiff's] failure to adequately record his time." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998).

Because Seward seeks overtime pay for work that he, himself, failed to record, and because he can proffer no evidence that IBM had actual or constructive knowledge of uncompensated overtime, the Court should grant IBM's motion for summary judgment.

ATI-2517563v3

- 2 -

**RELEVANT FACTUAL BACKGROUND**

**I.     IBM'S OVERTIME POLICY AND THE REPORTING OF OVERTIME**

IBM mandates that employees be paid for all hours worked and that they receive overtime for hours over 40 in a workweek.  (Seward Dep. 252:22-255:19, Exs. 27, 28 (policy providing that "[a]ll hours in excess of 40 hour worked . . . will be considered as weekly overtime hours"); Seward Dep. 271:3-272:11, Ex. 32 at 7 (training materials providing that "off the clock" work is improper because it "intentionally creates a false record of employee time" and "may also cause a violation of overtime pay or other applicable labor laws"); Seward Dep. 17:6-18:8, Ex. 1 (offer letter providing "[a]ll hours worked in excess of 40 per week will be compensated at a rate of time and one half")).[1]  IBM's Business Conduct Guidelines, which Plaintiff acknowledged annually, require employees to accurately record all hours worked, including overtime.  (Seward Dep. 239:14-240:14, Ex. 26 at § 3.6 ("employees who are required to record hours worked must record them accurately, and those eligible for overtime must record all hours worked including overtime hours").)

To account for employees' overtime, IBM uses an exception-based timekeeping system known as eTOTALS.[2]  (Seward Dep. 250:10-17, 251:7-8; Boniche Decl. ¶¶ 3-10.)  By default, this system credits employees with the hours that they are scheduled to work.  (Seward Dep. 250:18-251:2; Boniche Decl. ¶ 3.)  If an employee works additional hours, before or after their scheduled shift, IBM requires the employee to report this time in the eTOTALS system.  (Boniche Decl. ¶ 5.)  This Court has already concluded "that IBM's timekeeping system and

---

[1] References to "Seward Dep." are to excerpts of the transcript of the October 23, 2008 deposition of Plaintiff Charles Seward.  All cited transcript excerpts are attached to the Declaration of Craig S. Friedman submitted herewith.

[2] The predecessor system was known as TOTALs.  (Boniche Decl. ¶ 11.)  References to "Boniche Decl." are to the Declaration of Sergio Boniche, which was previously filed at Docket Entry 53 and which, for the Court's convenience, is filed again herewith.

formal overtime policies are legal . . . since they allow for the complete and accurate recording of all time worked." (*See* Report & Recommendation ("R&R") (Docket Entry 170) at p. 2, *objections overruled*, 2012 WL 860363 (S.D.N.Y. Mar. 9, 2012).)

Plaintiff fully admits that he was obligated to record his time accurately, including overtime, and that he committed to IBM that he would do so. (Seward Dep. 239:20-240:4, Ex. 26 at § 3.6; 269:10-16.) In terms of how to report overtime, Seward knew that "[i]f [employees] want to get paid, [eTOTALS is] the way – the only way that they get paid the overtime." (*Id.* at 252:15-17.) In fact, Seward himself used eTOTALS to get paid for overtime. (*Id.* at 252:6-11.)

As to the specific task of boot-up work, Seward understood that it was compensable, that he was responsible for recording this time, and that he had the ability to do so:

> Q: So do you believe that logging into the computer, getting ready for your scheduled start time—
> A: Yes, sir.
>
> Q: --logging into the tools and those types of things, you believe that that is compensable work; right?
> A: Yes, sir.
>
> Q: And you've believed that for a while?
> A: Right.
>
> Q: And IBM's policies that we just went through make pretty clear that it's the employee's obligation to keep their time cards accurate; right?
> A: Yes.
>
> Q: And you had the ability to adjust your eTOTALs and enter overtime; right?
> A: Yes, sir.

(Seward Dep. 268:25-269:16.)

- 3 -

ATI-2517563v3

No one in IBM management told Seward not to record pre-shift boot-up work or to inaccurately record his time. (Seward Dep. 269:23-270:13.) And Seward never raised boot-up time with management in an attempt to address any questions that he had. (*Id.* at 270:8-13.)

## II. PLAINTIFF'S WORK FOR THE TEACH TEAM AND THE SCET TEAM

Plaintiff was a senior customer representative at IBM's Riveredge call center in Atlanta, Georgia, and was responsible for handing inbound customer calls. (Seward Dep. 12:11-13, 16:4-11, 22:1-9, 28:20-29:5.) As part of his duties, Seward was responsible for logging into the phone system (which took a few seconds) at the start of his shift to indicate to his manager that he was present for work. (Seward Dep. 37:2-25; Williams Dep. 116:4-19.)[3] He was also responsible for booting up his computer, and starting up various computer applications. (Seward Dep. 63:14-64:21.) Seward understood that compensation was not driven by when he was logged into the phone; he knew that compensation instead was based on time recorded in eTOTALS. (*Id.* at 288:4-10.)

The time period relevant to Seward's claims is, at most, April 28, 2005 to May 31, 2008. (*See* Docket Entry 185 (dismissing with prejudice Plaintiff's claims arising from his employment with IBM on and after June 1, 2008).) During this period, Seward reported to two different managers – first Kerry Bethea, and then Juanlyn Williams – neither of whom expected their employees to boot up pre-shift. When Plaintiff reported to Bethea, he was a member of the Teach team. (Seward Dep. 14:6-23.) Under Bethea, Plaintiff started his day by first logging into the phone system, and then booting up his computer and applications. (*Id.* at 162:10-164:12.) Seward testified that Bethea was aware of this sequence, and that Bethea instructed him not to

---

[3] References to "Williams Dep." are to excerpts of the transcript of the March 24, 2011 deposition of Juanlyn Williams.

log into the phone system until his start time. (*Id.*) Bethea sat in a different building than did Seward. (*Id.* at 123:11-17.) This is because Bethea sat with a less experienced team that he "would monitor . . . more" (*id.*); by contrast, Seward's Teach team was made up of "seasoned vets" (*id.* at 122:22-123:17).

In about January 2007, Seward joined the SCET team, reporting to Juanlyn Williams (Seward Dep. 12:11-16, 13:8-20.) Williams, like Bethea, expected her team to first log into the phone at their start time, and then boot up their computers and start their applications. (Williams Dep. 114:15-118:13; *see also id.* at 188:22-189:15 ("No, their computer does not have to be booted up" at their start time.), 104:13-21 ("There's no business reason" or "computer or equipment reason" for an agent "to arrive more than two or three minutes in advance of their scheduled shift time").) Consistent with this expectation, Williams instructed her team members, including Seward, to start working at their start time. (Seward Dep. 222:15-223:7, Exh. 2 (e-mail from Williams to SCET team instructing that "[y]ou are required to start working at your scheduled start time"); Exh. 3 ("Please be advised that you are required to be available as quickly as possible at your start time.").) Williams never told the SCET team to be logged in to all of their tools at the start of their shifts. (*Id.* at 222:7-22.) Williams did see members of her team in the office before their shifts started, but the activities she observed were non-work related. (Williams Dep. 124:15-22 ("[W]hen I walk the floor and look at people sitting at their desk before [their] start time, they're reading the newspaper, they're looking at Yahoo, they're on CNN, they're doing a lot of other stuff that has nothing to do – they're typing personal letters or whatever. They're not doing IBM business.").) Seward admitted that he, too, performed personal tasks before the start of his shift, such as surfing the internet, checking personal emails, and heating up his coffee. (Seward Dep. 101:8-15, 109:23-110:23.)

Seward claims that, while working under Bethea and Williams, he worked pre-shift overtime to boot up his computer but never recorded the overtime in eTOTALS. (Seward Dep. 260:7-15.) In June 2008, Seward started the practice of booting up his computer only after his start time. (*Id.* at 97:25-100:11.) He changed his approach at that time because he wanted to see how long, on average, it would take him to boot up his computer after his shift started and because, as he put it, "I'm not getting paid to come in here early and bring up my system." (*Id.*) As no time did Seward ask anyone if he could record pre-shift boot-up time in eTOTALS. (*Id.* at 270:8-13.)

## **ARGUMENT**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant "point[s] out to the district court [] that there is an absence of evidence to support the nonmoving party's case," *Celotex*, 477 U.S. at 325, the non-moving party can survive summary judgment only if he "set[s] forth specific facts showing that there is a genuine issue for trial." *Romero v. H.B. Automotive Grp., Inc.*, 2012 WL 1514810, at *4 (S.D.N.Y. May 1, 2012) (citation and internal quotation omitted). "'The nonmovant may not rely on conclusory allegations or unsubstantiated speculation' . . . but must support the existence of an alleged dispute with specific citation to the record materials." *Id.* (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

ATI-2517563v3

I.  **AN EMPLOYER IS ONLY LIABLE FOR OVERTIME THAT IT KNEW OR SHOULD HAVE KNOWN THE EMPLOYEE WORKED**

The FLSA requires employers to pay overtime to employees who work more than forty hours per week. 29 U.S.C. § 207(a)(1). The term "employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g). "Under the FLSA, an employee has the burden of proving that he performed work for which he was not properly compensated." *Daniels v. 1710 Realty LLC*, 2011 WL 3648245, at *4 (E.D.N.Y. Aug. 17, 2011) (citations and internal quotations omitted). "Case law in this circuit instructs that an employee is only entitled to compensation for those hours of work for which the employer had *actual or constructive knowledge*." *Id.* at *6 (emphasis added); *see also Edwards v. City of New York*, 2012 WL 1694608, at *4 (S.D.N.Y. May 15, 2012); 29 C.F.R. § 785.11 (interpreting the "suffer or permit to work" requirement to mean that an employer violates the FLSA when it "knows or has reason to believe that [the employee] is continuing to work and the time is working time").

Actual or constructive knowledge is lacking "where the acts of an employee prevent an employer from acquiring knowledge of alleged uncompensated overtime hours." *Joza v. WW JFK LLC*, 2010 WL 3619551, at *8 (E.D.N.Y. Sept. 10, 2010); *see also Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) ("the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about"); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (similar).

Such is the case where an employee fails to adhere to reasonable time reporting requirements. "Although the FLSA obligates employers to maintain appropriate overtime records, it is well-established that employers may require employees to follow and adhere to reasonable procedures for reporting overtime worked, and may rely upon what employees report, and do not report." *Joza*, 2010 WL 3619551, at *10 n. 5; *see also Edwards*, 2012 WL 1694608,

at *4 (no actual or constructive knowledge where "plaintiffs may have on occasion chosen not to submit overtime slips for minutes of overtime work," even though "plaintiffs were familiar with and utilized the defendant's system for tracking and compensating overtime" and were paid overtime when they did record it); *Gaylord v. Miami-Dade County*, 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999) ("[a]n employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur").

Thus, summary judgment is warranted where the plaintiff "admit[s] that he was paid for the overtime hours he included on his time sheet, and that uncompensated time was the result of his failure to adequately record his time." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998) (affirming summary judgment to employee); *Forrester*, 646 F.2d at 414 (affirming summary judgment to employer where plaintiff "himself was paid for all overtime he reported" and plaintiff "knew that overtime was supposed to be reported on time sheets and that the store regularly paid for such reported overtime"). Were it otherwise, "[a]n employee, whether or not having truly worked overtime hours, could manipulate the judicial process by deliberately filing inaccurate payroll records and waiting until the time of suit to confess their inaccuracy." *Joza*, 2010 WL 3619551, at *9. "In such circumstance, the worker would render . . . [the] employer's FLSA-compliant records useless and the employer, through no fault of its own, defenseless to refute the employee's 'recollection.'" *Id.* (citation and internal quotations omitted).

## II.　SEWARD CANNOT ESTABLISH ACTUAL OR CONSTRUCTIVE KNOWLEDGE

Seward cannot create a jury question as to whether IBM had actual or constructive knowledge of his alleged boot-up overtime. Rather, IBM's lack of knowledge of any such overtime "is directly attributable to plaintiff's determination not to comply with [IBM's]

- 8 -

established overtime reporting and compensation procedure," *Joza*, 2010 WL 3619551, at *11, a procedure that this Court has already found is "legal . . . since [it] allow[s] for the complete and accurate recording of all time worked," R&R at p. 2.  Specifically, Seward admits that he understood that pre-shift boot-up work was compensable (Seward Dep. 268:25-269:16); that IBM policy required employees to record all time worked and that he was aware of the policy and committed to abide by the policy (*id*. at 239:20-240:4, Ex. 26 at § 3.6; 269:10-16); that he was likewise aware of the eTOTALS timekeeping system, had the ability to record overtime in eTOTALS, and, in fact, had used the system to record overtime, for which he was fully paid (*id.* at 252:6-17, 268:25-269:16); that no manager told him not to record pre-shift boot-up work or to record his time inaccurately (*id.* at 269:23-270:7, 279:21-280:3); and that, despite all this, he chose not to record alleged boot-up work that he had the ability to record in eTOTALS (*id.* at 266:7-15; *see also id.* at 252:15-17 ("[i]f [employees] want to get paid, [eTOTALS is] the way – the only way that they get paid the overtime")).

What is more, neither of Seward's managers – Bethea nor Williams – had reason to know that Seward was allegedly performing pre-shift boot-up work.  As to Bethea, Seward testified that Bethea told him "[d]on't log into the phone until your start time." (Seward Dep. 163:23-164:6.)  Seward further testified that not only was his practice to boot up his computer only *after* logging into the phone system, but that Bethea knew that this was his practice. (*Id.* at 163:20-164:12 (Bethea "knew the sequence was, log into your phone first, then the system").)  Therefore, Seward's own testimony confirms that Bethea would have had no reason to know that Seward was allegedly booting up pre-shift, even if he were.  Further, Seward testified that Bethea arrived at work after the start of Seward's shift and that Bethea sat in an entirely different


building than Seward, meaning Bethea would not have witnessed any purported pre-shift work by Seward.  (*Id.* at 122:25-123:17.)

As to Williams, she instructed her team to "start working at your scheduled start time" (Seward Dep. 222:15-223:7, Exh. 2) or, alternatively, "be available as quickly as possible at your start time" (*id.*, Exh. 3).  This is the exact opposite of an instruction to boot-up pre-shift.  Particularly because Seward considered booting up to be compensable work (*id.* at 268:25-269:16), Williams' instruction to "*start* working at your scheduled start time" clearly conveys that Seward was to *start* booting up when his shift began, which was Williams' expectation (Williams Dep. 114:15-118: 13, 188:22-189:15, 104:13-21), not to *finish* booting up by the start of his shift, which Williams did not expect (*id.* at 188:22-189:15).  And even if Seward in confusion subjectively believed that to "start working at your scheduled start time" meant that he should boot-up his computer before the start of his shift (Seward Dep. 81:23-82:9), Seward's subjective understanding cannot create a jury question.  *Hawthorne v. Sears Termite & Pest, Control, Inc.*, 309 F. Supp. 2d 1318, 1332 (M.D. Ala. 2003) (plaintiff's "own subjective interpretation . . . cannot defeat [an employer's] motion for summary judgment"); *see also Banez v. New York Foundling Hosp.*, 2001 WL 1035142, at *6 (S.D.N.Y. Sept. 7, 2001) ("conclusory allegations based on subjective perceptions are insufficient to defeat summary judgment") (citing *Meiri v. Dacon*, 759 F.2d 989 (2d Cir. 1985)).

Moreover, even if Williams' instruction could reasonably be construed as a requirement to finish booting up by the start of the shift (which it cannot), Seward's claim is independently barred by the undisputed fact that he did not record the time, even though he admitted that he had the ability to do so and was never told not to record it.  (Seward Dep. 268:25-269:16, 270:5-13, 279:21-280:3.)  Not only that, but despite the fact that Williams never dissuaded him from

recording overtime in the past (*id.* at 279:21-280:3), Seward did not even raise with Williams the issue of recording pre-shift boot-up time (*id.* at 270:8-13). Under the law, an employee cannot sit idly by, incurring alleged overtime wages in silence, and then spring an overtime demand on the employer in litigation. *Joza*, 2010 WL 3619551, at *10 ("'an employer must have an opportunity to comply with the provisions of the FLSA,' and 'where the acts of an employee prevent the employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of the FLSA's overtime requirements'") (quoting *Forrester*, 646 F.2d at 414-15).

Nor did Seward's presence at the call center before the start of his shift create a jury question as to IBM's actual or constructive knowledge. Williams witnessed members of her team doing personal tasks, such as surfing the internet, reading the newspaper, and writing personal letters, before the start of their shifts (Williams Dep. 124:15-22, 128:12-25), and Seward admitted to doing these very things (Seward Dep. 101:8-15, 109:23-110:23). Williams, therefore, could not be expected to have "divined" that Seward arrived early for the purpose of supposedly satisfying some requirement to boot up prior to the start of his shift. *Joza*, 2010 WL 3619551, at *10 (where there were "non-work explanations for [plaintiff's] off-hour presence at the hotel and evidence showing she was, indeed, at times engaged in non-employer activities," "to find that the managers should have somehow divined she was working overtime would require the exercise of sheer speculation").

In short, by failing to record his time, Seward never gave IBM the chance to pay for it. And IBM should not be penalized for Seward's failure to comply with its reasonable timekeeping requirements. As Williams put it:

> Anything can happen without my knowledge, okay? But keep in mind if something is happening outside of my knowledge, these

- 12 -

> are individuals that are adults. They need to communicate that I'm doing something that I should be getting paid for. Now, you know, I don't know if somebody is doing something outside of my knowledge.

(Williams Dep. 81:13-82:2; *see also Joza*, 2010 WL 3619551, at *9 (employee cannot "deliberately fil[e] inaccurate payroll records and wait[] until the time of suit to confess their inaccuracy," thereby render[ing] . . . [the] employer's FLSA-compliant records useless and the employer, through no fault of its own, defenseless to refute the employee's 'recollection'").)

## CONCLUSION

For the foregoing reasons, this Court should grant IBM's Motion for Summary Judgment as to the Claims of Plaintiff Charles Seward.

- 13 -

Dated: May 29, 2012                                    JONES DAY

By:  /s Craig S. Friedman
Matthew W. Lampe
mwlampe@jonesday.com
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939

Matthew W. Ray (*pro hac vice*)
mwray@jonesday.com
Joanne R. Bush (*pro hac vice*)
jrbush@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
(214) 220-3939

Deborah A. Sudbury (*pro hac vice*)
dsudbury@jonesday.com
Craig S. Friedman
csfriedman@jonesday.com
JONES DAY
1420 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 581-3939

Attorneys for Defendant International Business Machines Corporation