Matthew W. Lampe
mwlampe@jonesday.com
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939

Matthew W. Ray (*pro hac vice*)
mwray@jonesday.com
Joanne R. Bush (*pro hac vice*)
jrbush@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
(214) 220-3939

Deborah A. Sudbury (*pro hac vice*)
dsudbury@jonesday.com
Craig S. Friedman
csfriedman@jonesday.com
JONES DAY
1420 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 581-3939

Attorneys for Defendant
International Business Machines Corporation

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X
                                                        )
CHARLES SEWARD, Individually and on   ) No. 08 CV 3976 (VB) (PED)
Behalf of All Others Similarly Situated,   )
                                                        ) **ECF CASE**
    Plaintiff,   )
                                                        ) **REPLY MEMORANDUM OF LAW**
    -against-   ) **IN SUPPORT OF DEFENDANT'S**
                                                        ) **MOTION FOR SUMMARY**
INTERNATIONAL BUSINESS MACHINES ) **JUDGMENT AS TO CLAIMS OF**
CORPORATION,   ) **PLAINTIFF CHARLES SEWARD**
                                                        )
    Defendant.   )
                                                        )
                                                        )
------------------------------------------------------- X

ATI-2523278v4

**TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................ 2
I.    SEWARD CANNOT ESTABLISH ACTUAL OR CONSTRUCTIVE KNOWLEDGE AS TO HIS TIME ON THE TEACH TEAM ......................................... 2
II.    SEWARD CANNOT ESTABLISH ACTUAL OR CONSTRUCTIVE KNOWLEDGE AS TO HIS TIME ON THE SCET TEAM ............................................ 6
CONCLUSION ........................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Berrios v. Nicholas Zito Racing Stable, Inc.*,
    2012 WL 1034053 (E.D.N.Y. Mar. 28, 2012) ........................................................................ 8

*Chao v. Gotham Registry, Inc.*,
    514 F.3d 280 (2d Cir. 2008) .................................................................................................. 9

*Daniels v. 1710 Realty LLC*,
    2011 WL 3648245 (E.D.N.Y. Aug. 17, 2011) ...................................................................... 1

*Georgia-Pacific Consumer Prods., LP v. Int'l Paper Co.*,
    566 F. Supp. 2d 246 (S.D.N.Y. July 16, 2008) ..................................................................... 6

*Jamaica Ash & Rubbish Removal Co. v. Ferguson*,
    85 F. Supp. 2d 174 (E.D.N.Y. 2000) .................................................................................... 5

*Johnson v. Nat'l R.R. Passenger Corp.*,
    2007 WL 2790028 (E.D.N.Y. Sept. 25, 2007) ...................................................................... 3

*Jordan v. Bates Adv. Holdings, Inc.*,
    1999 WL 595669 (S.D.N.Y. Aug. 9, 1999) .......................................................................... 5

*Joza v. WW JFK LLC*,
    2010 WL 3619551 (E.D.N.Y. Sept. 10, 2010) ...................................................................... 6

*Kuebel v. Black & Decker, Inc.*,
    643 F.3d 352 (2d Cir. 2011) ........................................................................................... 8-9, 9

*Seward v. Int'l Bus. Machines Corp.*,
    2012 WL 860363 (S.D.N.Y. Mar. 9, 2012) (Briccetti, J.) .................................................. 1, 4

*Zivali v. AT&T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011) ................................................................................... 4

ATI-2523278v4

Seward flatly admitted at deposition that his managers did not instruct him to boot up pre-shift; that he was under explicit instructions to record all overtime that he did in fact work and had the ability to record any boot-up overtime but failed to do so; that no manager told him not to record boot-up overtime; and that he never raised with IBM any question about whether it was appropriate to record boot-up overtime. (Motion[1] 2-6.) These and other admissions outlined in IBM's Motion preclude Seward from satisfying his evidentiary burden. *Daniels v. 1710 Realty LLC*, 2011 WL 3648245, at *4 (E.D.N.Y. Aug. 17, 2011) ("Under the FLSA, an employee has the burden of proving that he performed work for which he was not properly compensated.").

In his Opposition, Seward attempts to divert attention away from his dispositive admissions by proffering scattershot evidence about former opt-in plaintiffs and about managers and teams not his own. But this Court has already determined that Seward is not "similarly situated" to the former opt-in plaintiffs, which is precisely why the Court "dismissed [them] from this case." *Seward v. Int'l Bus. Machines Corp.*, 2012 WL 860363, at *3 (S.D.N.Y. Mar. 9, 2012) (Briccetti, J.). And no inferences relevant to Seward can be drawn from managers and teams not his own "given the many differences in specific job duties, team functions and structures, managerial expectations, and individual experiences" throughout the facility where Seward worked. *Seward*, 2012 WL 860363, at *1.

In short, Seward's claim turns on the facts relevant to him – the facts that he admitted to at deposition – and these facts mandate summary judgment in favor of IBM.

---

[1] "Motion" refers to IBM's May 29, 2012 memorandum of law in support of its summary judgment motion. References to "Opposition" and "Opp." are to Seward's June 29, 2012 memorandum of law in opposition to IBM's motion for summary judgment. Other abbreviated references employ the same definitions as in the Motion, unless otherwise noted.

# ARGUMENT

## I. SEWARD CANNOT ESTABLISH ACTUAL OR CONSTRUCTIVE KNOWLEDGE AS TO HIS TIME ON THE TEACH TEAM

Seward testified that his manager Kerry Bethea, knowing that Seward's sequence was to boot up his computer *after* logging into the phone, specifically directed him *not* to log into the phone until his start time. (Motion 9.)  This fact, along with Seward's further admission that he never recorded any boot-up overtime that he nonetheless worked, or otherwise alerted IBM to such work by asking whether he *should* record it (Seward Dep. 266:7-15, 268:25-269:16, 270:8-13), is fatal to Seward's claims.  Seward's various efforts to overcome his dispositive admissions are unavailing.

First, Seward's lead argument (Opp. 1, 2) – based on testimony from former second-line manager Jeff Granger – fails for multiple reasons.  Most fundamentally, Granger never even supervised Bethea or the Teach team.  (Granger Dep. 22:10-25.)  The Teach team's second-line manager was Sharon Lofton (Lofton Dep. 25:9-22), and this Court has already found that Granger "did not even know what [Lofton] may have required for her teams" (R&R 15-16 (noting Lofton's testimony that CCRs were not required to be at work before their start time)). What is more, Granger's purported understanding about pre-shift work was based on what he merely *speculates* was "implied" or "expected" – not even stated – by former Director of Call Center Operations Timothy Allaway.  (Granger Dep. 28:6–29:7.)  Allaway, moreover, left IBM *nearly a decade ago* (Granger Dep. 54:6-21, 66:25-67:3), long before the time period relevant to this case.  And Granger does not recall any of Allaway's successors or other subsequent high-level managers ever communicating an expectation about pre-shift boot-up work.  (*Id.* at 69:15-70:15, 76:6-78:2; *see also* R&R 14.)  As if that were not enough, Granger– contrary to what Seward now says (Opp. 3-4) – adamantly denied that IBM had a practice of not paying for boot-

up time when it was worked.  (Granger Dep. 90:17-18 ("I would never tell an employee not to report any time that was worked."); 111:22-112:5 ("we didn't want people working for free, in regards to coming in early"); 113:9-18 (CCRs "should be paid for" time spent "booting up their computers"); *see also* R&R 15.)

<span style="text-decoration:underline">Second</span>, Seward similarly draws no support (Opp. 2) from first-line manager George Lambousis' email instruction to his team to boot-up pre-shift.  Seward was not on Lambousis' team, the System X team.  (R&R 10 n. 3.)  Indeed, Seward not only never received an email from Lambousis, he did not even know Lambousis.  (Seward Dep. 307:12-16.)

<span style="text-decoration:underline">Third</span>, the Gary Kamprath email (Pl. 56. 1 ¶ 21 (citing Seward Dep. 148, 149))[2] likewise does not create a triable issue.  Kamprath was not Seward's manager (Seward Dep. 291:3-8), or a manager at all (R&R 17).  Moreover, the email contains only a "recommendation," not an instruction of any kind.  (Opp. 2.)  And, in any event, Seward's own testimony about Bethea's above-referenced directive (Motion 9) shows that Bethea did not adopt any such recommendation.

<span style="text-decoration:underline">Fourth</span>, Seward points (Opp. 1, 4, 12, 17) to the testimony of Naisha Lyons, a former opt-in in this case, who said that Bethea falsified her time records and required her to be call-ready at the start of her shift.  But Seward does not allege falsification (Seward Dep. 277:12-18), and, as to Seward's start-up requirements, Bethea specifically instructed Seward to boot up only *after* his shift started (Motion 9).  *See Johnson v. Nat'l R.R. Passenger Corp.*, 2007 WL 2790028, at *3 (E.D.N.Y. Sept. 25, 2007) (no genuine issue of fact where plaintiff attempts to contradict his own testimony with statement from another individual).

---

[2] References to "Pl. 56.1" are to Seward's June 29, 2012 Rule 56.1 Counterstatement (Docket Entry 199).

ATI-2523278v4

Fifth, Seward points (Opp. 1-2, 4-5, 6, 17, 18) to the testimony of Cathy Barday, a team lead on the Teach team. Barday alleges that she was required to take calls before the start of her shift and, further, that she herself told other employees to take calls before the start of their shifts. But Seward unequivocally testified that he did not receive such an instruction; Bethea told him not to log onto the phone before his start time (Motion 9), making it impossible for Seward to have taken calls prior to his start time. And while Seward points (Opp. 4) to Barday's allegation that she was denied overtime pay for a special project she worked on as a team lead (Barday Dep. 34:18-25), this cannot raise a triable issue as to *Seward's* claims because Seward never worked on such a project and makes no such claim. *Seward*, 2012 WL 860363, at *1 ("many differences in specific job duties").

Sixth, Seward claims (Pl. 56.1 Add'l Facts ¶ 1 (citing Seward Dep. 133-36)) that he complained to Bethea on one occasion because he thought that he would be required to work pre-shift without pay based on a trainer's alleged statement. This argument is a red herring. Again, Seward's own testimony confirms that Bethea did not, in fact, require pre-shift work. (Motion 9.)

Seventh, Seward attempts to create a triable issue by pointing to IBM's requirement that overtime be preapproved and by alleging that Bethea would not allow for overtime unless there was a "dire need." (Pl. 56.1 ¶ 11.) As an initial matter, pre-approval requirements are perfectly permissible, *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 462 n. 3 (S.D.N.Y. 2011) ("Requiring pre-approval for overtime . . . is not unlawful"), and, thus, the mere fact of such a requirement cannot give rise to an inference of unpaid overtime. And, although Seward alleges that Bethea kept overtime to a minimum, Seward notably does *not* say that Bethea would *never* allow it – and, what is more, Seward never even asked if he could record pre-shift overtime. (Seward Dep. 270:8-13.) But, in any event, a pre-approval requirement cannot raise a genuine

issue of fact as to whether Seward could *record* pre-shift boot-up time here, particularly given that IBM's policy specifically says that "if an employee's task takes them over his or her scheduled hours, employees should still record that time, and IBM will pay that employee for the time . . . , even if prior authorization was not received." (Seward Dep. 256:9-258:4, Exh. 30.)

Eighth, Seward cites as "evidence" (Pl. 56.1 ¶ 10 (citing Seward Dep. 282, 284-85)) a deposition *question* about Seward's allegation in a declaration that he was "verbally informed . . . to work off the clock" (Seward Dep. 282:11-21). At the outset, it is wholly disingenuous to cite to a deposition question as "evidence." *Jamaica Ash & Rubbish Removal Co. v. Ferguson*, 85 F. Supp. 2d 174, 182 (E.D.N.Y. 2000) ("an attorney's statement . . . is not evidence"). In any event, this declaration testimony cannot raise a genuine issue of material fact for the simple reason that Seward did not even submit it with his Opposition. And that's for good reason – Seward recanted significant portions of the declaration, including the very paragraph that he now purports to quote from.[3] Even if he had offered it, the declaration still does not allow for any permissible inference because Seward failed to identify the individuals who allegedly made these statements, when the statements were made, or any other detail about the statements. *See Jordan v. Bates Adver. Holdings, Inc.*, 1999 WL 595669, at *3 (S.D.N.Y. Aug. 9, 1999) (plaintiff's affidavit regarding statements of others does not create triable issue where "she fails to identify the speakers, the substance of the comments, or when exactly they were made"). And, in any event, when pressed at his deposition about such statements, Seward conceded that he could not remember what was said. (Seward Dep. 284:3-21 ("I'm trying to remember the situation. I apologize. I just can't remember.").)

---

[3] In the declaration, Seward state that he received written instructions to work off the clock in "mass emails directed to all call center employees nationwide." (Seward Dec. ¶ 30.) At deposition, Seward was dumbfounded. "[M]ass e-mails – that one I don't recall. I apologize. I'm trying to remember why I have that statement there. I must have an e-mail or something to back up that statement." (Seward Dep. 282:22-283:2.)

Seward, therefore, has failed to raise a genuine issue of fact as to Seward's time on the Teach team.

## II. SEWARD CANNOT ESTABLISH ACTUAL OR CONSTRUCTIVE KNOWLEDGE AS TO HIS TIME ON THE SCET TEAM

Seward likewise fails to create a jury question as to the period he worked on the SCET team under Williams. Again, Seward's testimony precludes a finding that IBM had actual or constructive knowledge of alleged boot-up overtime. Seward specifically admits that Williams gave him two instructions, both in writing, regarding his shift start up. First, Williams instructed Seward to "start working at [his] scheduled start time." (Seward Dep. 222:15-223:7, Exh. 2.) Given Seward's and Williams' shared understanding that boot-up time was work (Seward Dep. 268:25-269:16; Williams Dep. 188:7-189:11), this instruction can be reasonably read only as the opposite of an instruction to boot-up pre-shift. *See Georgia-Pacific Consumer Prods., LP v. Int'l Paper Co.*, 566 F. Supp. 2d 246, 254 (S.D.N.Y. July 16, 2008) (a "strained interpretation" that is "highly implausible" does not create a genuine issue of fact). Second, Williams instructed Seward "to be available *as quickly as possible* at your start time." (Seward Dep. 222:15-223:7, Exh. 3 (emphasis added).) This instruction likewise does not give rise to any inference that IBM knew of unpaid overtime. And even if Seward actually did work pre-shift overtime, he has absolutely no excuse for failing to record it given his admission that Williams never dissuaded him from recording overtime (Seward Dep. 279:21-280:3) or told him not to record boot-up time (Seward Dep. 269:23-270:7) and given that Seward was under explicit instructions to record all time worked (Motion 2; Seward Dep. 264:12-266:5, Exh. 31). *See also Joza v. WW JFK LLC*, 2010 WL 3619551, at *8 (E.D.N.Y. Sept. 10, 2010). Seward's responding points fail to raise any genuine issue of material fact.

ATI-2523278v4

First, Seward suggests (Pl. 56.1 ¶ 25) that "[o]nly in meetings after Seward had brought this lawsuit did [Williams] change her requirement to state that Seward and his co-workers could be available as soon as possible." But this is false – Williams' email instructing Seward "to be available as quickly as possible" is dated October 4, 2007 (Seward Dep. 222:15-223:7, Exh. 3), well before this action was filed on April 28, 2008 (Docket Entry 1).[4]

Second, and notwithstanding the written instruction to be available *as soon as possible* at his start time, Seward claims (Pl. 56.1 ¶ 25 (citing Seward Dep. 220-21)) that he was instructed to be available at the start of his shift. But Seward acknowledges that his understanding is based on Williams' above-referenced, alternatively-phrased instruction "to start working at your scheduled start time" (Seward Dep. 81:23-82:9), which, as explained above, does not support Seward's claims in the least, especially considering his and Williams' shared understanding that boot-up time *was* work time (Seward Dep. 268:25-269:16; Williams Dep. 188:7-189:11).[5]

Third, Seward points again (Opp. 1, 4) to the testimony of Lyons. Seward states that Lyons was a "coworker" of Seward's who testified that she "was required to work pre-shift overtime" and that "Lyons testified that Manager Williams instructed her and the team not to submit requests for pre-shift overtime." (*Id.*) This argument is disingenuous given that Lyons worked on a different team from Seward. (Lyons Dep. 14:4-10, 47:8-21 (Lyons on Software Blend team); Motion 4, 5 (Seward on the Teach team and then the SCET team).) Further, Williams held separate meetings with the two teams (Lyons Dep. 113:17-114:4) and did not issue the same instructions to the two teams (Seward Dep. 222:15-223:7, Exhs. 2, 3). Indeed,

---

[4] Seward apparently misread his own email chain. Williams' email to the SCET team is dated October 4, 2007; Seward forwarded Williams' email from his IBM email account to his personal email account on April 7, 2008. (Seward Dep. 222:15-223:7, Exh. 3.)

[5] Moreover, any purported verbal instruction by Williams cannot raise a genuine issue of fact because Seward conceded that he could not even remember exactly what Williams said in this regard. (Seward Dep. 223:8-224:10.)

Lyons did not even receive the very emails authored by Williams that set forth Williams' expectations for SCET regarding commencing work.  (Seward Dep. 222:15-223:7, Exhs. 2, 3 (emails sent only to SCET team).)  And the fundamental differences between Seward and Lyons are further amplified by the fact that, although Lyons alleges that Williams would not let her record overtime (Opp. 1), Seward testified to the opposite – that Williams *never* dissuaded him from recording overtime (Seward Dep. 279:21-280:3).  (*See* R&R 45, 50 ("given the many differences in specific job duties, team functions and structures, managerial expectations, and individual experiences and understandings among the plaintiffs" and the "highly fact specific" defenses, no common policy regarding pre-shift boot-up work).)

Fourth, Seward attempts to recast the governing law, but this attempt, too, falls short.  Seward argues (Opp. 8-9) that, as a matter of law, it was not his responsibility to record his time and that, instead, it was IBM's burden to pay for the time regardless of whether he recorded it.  As support, Seward cites to *Berrios v. Nicholas Zito Racing Stable, Inc.*, 2012 WL 1034053, at *13 (E.D.N.Y. Mar. 28, 2012).  But *Berrios* actually *endorses* the cases cited by IBM holding that a plaintiff cannot establish actual or constructive knowledge where he fails to record his time in the employer's timekeeping system.  *Id.* at *12 ("both the Second Circuit and this District have cited *Forrester* with approval").  And *Berrios* is distinguishable on its facts because, there, "Defendants did not keep track of the hours worked by Plaintiffs." *Id.* at *5.  Indeed, the *Berrios* court acknowledged the "circumstances peculiar" to the *Berrios* plaintiffs in contrasting other cases where, as here, "plaintiffs failed to record their own hours on time sheets." *Id.* at *13.

Seward also argues (Opp. 9-10) that "IBM cannot delegate its burden [to record hours worked] to Seward" and that "IBM has an affirmative duty to prevent employees from working for free."  Again, Seward misses the mark.  Although Seward cites *Kuebel v. Black & Decker,*

- 8 -

*Inc.*, 643 F.3d 352 (2d Cir. 2011), this stands for the unremarkable proposition that "where the employee's falsifications were carried out at the instruction of the employer or the employer's agents, the employer cannot be exonerated by the fact that the employee physically entered the erroneous hours into the timesheets." *Id.* at 363. Here, Seward points to no instruction by a manager to falsify a time record; to the contrary, Seward admitted at deposition that he was obligated to record his time accurately, that he had the ability to record boot-up work, and that no IBM manager told Seward not to record pre-shift boot-up work or to inaccurately record his time. (Motion 2-4.) Indeed, Seward acknowledged that Williams herself specifically instructed him, in writing, to record his time *accurately*. (Seward Dep. 264:12-266:6, Exh. 31.) Similar to *Kuebel* (*supra* 9), *Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. 2008), stands for the unremarkable proposition that, where an employer has actual or constructive knowledge of overtime, the employer must pay the employee for that overtime. *Id.* at 287. And *Gotham* could not be any more off point factually because, in that case, "[i]nformation that Gotham's nurses regularly worked overtime was communicated to Gotham each week on the nurses' time sheets." *Id.* Here, of course, Seward admittedly failed to record his pre-shift boot-up time.[6]

In short, and particularly in light of Seward's testimony about the instructions he received from his managers and his failure to record his alleged overtime, Seward's Opposition (and its focus on circumstances, practices, and teams other than Seward's) does nothing to create a

---

[6] Moreover, while Seward again points to the testimony of the trio of Granger, Lambousis, and Kamprath, their testimony does not create any triable issues regarding Seward. (*Supra* 2-3.) Seward invokes the testimony of Granger, who was a second-line manager, but Granger did not even supervise Williams' SCET team during the period that Seward was on the team. (Williams Dep. 41:20-42:7, 42:23-43:12; Granger Dep. 115:2-5; Motion 5.) Moreover, Granger acknowledged that the first-line managers know best about whether CCRs were required to boot up pre-shift (Granger Dep. 103:9-20; *see also* R&R 15), and Williams did not expect CCRs on her team to boot-up pre-shift (Williams Dep. 188:7-189:11). Seward also invokes the testimony of Lambousis who, like Williams, was a first-line manager. But Lambousis managed an entirely different team – and Lambousis never supervised Seward. (*Supra* 3.) And Seward invokes the email authored by Kamprath, but this is off the mark because Seward was not on Williams' team when the email issued. (R&R 16; Motion 5.)

permissible inference that IBM had actual or constructive knowledge of his alleged pre-shift overtime.

## CONCLUSION

For the foregoing reasons, and reasons stated in the Motion, this Court should grant IBM's Motion for Summary Judgment as to the Claims of Plaintiff Charles Seward.

Dated: July 13, 2012                            JONES DAY

                                                      By: /s Craig S. Friedman
                                                      Matthew W. Lampe
                                                      mwlampe@jonesday.com
                                                      JONES DAY
                                                      222 East 41st Street
                                                      New York, New York 10017
                                                      (212) 326-3939

                                                      Matthew W. Ray (*pro hac vice*)
                                                      mwray@jonesday.com
                                                      Joanne R. Bush (*pro hac vice*)
                                                      jrbush@jonesday.com
                                                      JONES DAY
                                                      2727 North Harwood Street
                                                      Dallas, Texas 75201
                                                      (214) 220-3939

                                                      Deborah A. Sudbury (*pro hac vice*)
                                                      dsudbury@jonesday.com
                                                      Craig S. Friedman
                                                      csfriedman@jonesday.com
                                                      JONES DAY
                                                      1420 Peachtree Street, N.E.
                                                      Atlanta, Georgia 30309
                                                      (404) 581-3939

                                                      Attorneys for Defendant International Business Machines Corporation